J-S76008-16

2016 PA Super 301

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JACK WILLIAMS | |
| Appellant | No. 3138 EDA 2015 |

Appeal from the Judgment of Sentence Entered September 30, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000048-2015

BEFORE:  STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.:                **FILED DECEMBER 23, 2016**

Appellant Jack Williams appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following his bench conviction for escape under 18 Pa.C.S.A. § 5121(a). Upon review, we affirm.

The facts and procedural history underlying this case are undisputed. On November 30, 2014, the Pennsylvania Board of Probation and Parole ("Board") issued a warrant to commit and detain Appellant on technical parole violations for changing residence without permission and failure to report as instructed.  As a result, Appellant was moved to Kintock Hall, a half-way house, where he was to remain pending the resolution of his

_____

[*] Former Justice specially assigned to the Superior Court.

technical parole violations. While at Kintock Hall, Appellant suffered a medical emergency on December 2, 2014. Appellant was escorted by a member of Kintock Hall to Temple University Hospital. Upon arrival at the hospital, Appellant left the company of his escort and fled. Appellant was charged with escape. He proceeded to a bench trial, following which the trial court found him guilty of escape. The trial court sentenced Appellant to 11½ to 23 months' imprisonment on September 30, 2015. Appellant timely appealed to this Court. Following Appellant's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant raises two issues for our review:

[I.] Was the evidence insufficient to support [A]ppellant's conviction for escape where the Commonwealth failed to prove that [A]ppellant was in official detention at Kintock Hall, a halfway house, and not under parole supervision, at the time of the alleged escape?

[II.] Should not this matter be remanded to the trial court for a new trial or a hearing on after-discovered evidence because while this case was pending on appeal [A]ppellant received a letter from the [Board] clarifying that he was under parole supervision when he left Temple Hospital without authorization?[1]

_____

[1] On May 13, 2016, Appellant filed in this Court a "Petition to Vacate Briefing Schedule and to Remand Matter to Trial Court Pursuant to Pa.R.Crim.P. 720." In the petition, Appellant argued that on March 3, 2016, he received a letter from the Board that included reference to facts that constituted after-discovered evidence under Rule 720. Specifically, Appellant alleged that according to the letter, he was merely on parole on December 2, 2014. Consequently, Appellant argues that his status as parolee at the time he fled
*(Footnote Continued Next Page)*

Appellant's Brief at 3.

We first address Appellant's claim that the evidence was insufficient to support his conviction for escape because the Commonwealth did not prove that he was in "official detention" when he escaped from Kintock Hall on December 2, 2014. Appellant points out that he was on parole on the date in question, which is excluded from the definition of official detention under Section 5121 of the Crimes Code. Thus, Appellant argues that the Commonwealth could not establish the offense of escape because, as a parolee, he was not in official detention.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and

*(Footnote Continued)* ───────────────

from the hospital renders his conviction for escape improper. Based on the reasons set forth *infra*, we deny Appellant's petition to vacate and remand.

- 3 -

all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

Section 5121 of the Crimes Code, relating to escape, provides in part:

(a) A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

 . . . .

(e) **Definition.**--As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; **but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail**.

18 Pa.C.S.A. § 5121(a) and (e) (emphasis added). In *Commonwealth v. Maldonado*, 966 A.2d 1144 (Pa. Super. 2009), *appeal denied*, 989 A.2d 8 (Pa. 2010), we addressed the issue of whether Section 5121 necessarily excludes all parolees from its ambit, even those who have been arrested for violating terms of their parole, are notified they are considered to be in pre-release status, and are detained in an official housing facility from which they leave without permission prior to adjudication of their parole violation hearings.

In *Maldonado*, each appellee was on state parole and was accused of having committed technical parole violations of his respective parole

conditions. Each was apprehended by his parole officer and sent to Pennsylvania Community Alternative to Prison Program ("Penn CAPP"), which is administered through a contract with the Pennsylvania Department of Corrections. There, each appellee signed an "acknowledgement of status," which contained language that each appellee is no longer on parole, but rather on pre-release. The appellees then left Penn CAPP without permission. The Commonwealth charged them with escape. The trial court, however, dismissed the charges after it granted the appellees' respective petitions for writ of habeas corpus. The Commonwealth timely appealed.

On appeal, we vacated the trial court's order. In so doing, we concluded that a defendant who was held in an "alternative to prison" residence, awaiting the adjudication of possible parole violations, was being officially detained under Section 5121 of the Crimes Code. The *Maldonado* Court explained that "the legislative intent behind Section 5121 [is] to punish all those who remove themselves from official detention without permission." *Maldonado*, 966 A.2d at 1147. The court explained that Section 5121 does not necessarily exclude all parolees from its ambit, reasoning that "it is apparent the exclusions for supervision of probation and parole are not meant to apply to parolees who have been arrested for parole violations, [and] placed in a detention facility[.]" *Id.* The *Maldonado* Court further explained that once a parolee has been arrested and detained for a technical violation, "he can hold no reasonable expectation that he

retains the liberties and freedoms customary to a person operating under 'supervision of parole.'" *Id.* The Court observed:

> Critically, each [a]ppellee had been removed from the normal course of supervision of parole and recommitted to a detention facility pending a hearing to determine whether sufficient evidence of parole violation supported his detainment. This commitment was therefore not a term or condition of his release under supervision of parole; it was a suspension of such release, and a recommitment to official detention pending the outcome of his hearing. Breaking free from such detention is certainly among the mischief intended to be remedied by [S]ection 5121.
>
>   . . . .
>
> To give recommitted parole violators incentive to attempt a "no-risk" escape from detention centers such as Penn CAPP, centers from which they are told they are not free to leave, needlessly taxes our enforcement resources and places the public at large in danger. We find this potentiality was not what the General Assembly intended when it crafted and enacted the "supervision of probation or parole" exclusion for persons released on parole.

*Id.* at 1148. Accordingly, the *Maldonado* Court held that Section 5121 applies to a parolee once he is detained for technical parole violation prior to a formal adjudication of such violations by the Board.

Here, the evidence presented at trial, viewed in a light most favorable to the Commonwealth, establishes the Commonwealth proved the necessary elements of escape. At the bench trial, the Commonwealth presented the testimony of two witnesses: Marie Faison ("Ms. Faison"), Corrections Counselor for the Department of Corrections in the Division of Community Corrections, and Allison Van Fleet ("Ms. Van Fleet"), Assistant District Attorney in Philadelphia. N.T. Trial, 7/6/15, at 8-28. Ms. Faison testified

- 6 -

that in her capacity at the Department of Corrections, she supervised "all [state intermediate punishment] cases" and interacted with contracted facilities, "which are half-way houses the Commonwealth subcontracts with." *Id.* at 9. She testified that she supervised Kintock Hall, the contracted facility at issue here, which is located in Philadelphia. *Id.* at 10. Ms. Faison pointed out that at Kintock Hall, "[t]hey keep daily records of every offender. They notate the ins and outs, what their charges are, what their sentences are, what kinds of programs that they're involved in at the facility." *Id.* at 10-11. She then read from Appellant's December 2, 2014 incident report, which was introduced and admitted into evidence and described Appellant as a parole violator:

> On December the 2nd, 2014, at approximately 6:50 p.m., resident, [Appellant], BL1311615-DS, signed out of the facility on an approved emergency medical pass, escorted by S. Louis, resident supervisor, and was transported via ambulance to Temple University Hospital, located at 3401 North Broad Street, Philadelphia, Pennsylvania, 19140, telephone, 215-707-2000, after complaining of chest pain and trouble breathing.

> On December the 2nd, 2014, at approximately 6:55 p.m., Ericka Jordan-Frager, deputy officer, contacted PBPP247 and spoke to PC077, to inform him that [Appellant] was taken to Temple Hospital at 6:50 via ambulance and with a staff escort. On December the 2nd, 2014, at approximately 6:58, Ms. Jordan-Flager contacted Mr. Johnson, contract facility coordinator, to inform that [Appellant] was taken to Temple Hospital with a staff escort.

> On December the 2nd, 2014, at approximately 9:09 p.m., [Appellant] walked away from Temple University Hospital and away from Mr. Louis without authorization. On December the 2nd, at approximately 9:09, Mr. Louis contacted Devon Williams, the resident supervisor, to inform him that [Appellant] walked

away from Temple University Hospital and away from staff without authorization.

On December the 2nd, 2014, at approximately 9:12 p.m., Mr. Williams contacted Ms. Jordan-Flager to inform her that [Appellant] walked away from Temple University Hospital and away from Mr. Louis without authorization at 9:09. On December 2nd, 2014, at approximately 9:16, Ms. Jordan-Flager contacted Ms. Johnson to inform her of the occurrence. On December 2nd, 2014, at 9:19 p.m., Mr. Williams flagged the subject escape packet to the Pennsylvania State Police.

On December 2nd, 2014, at approximately 9:20, Ms. Jordan-Flager contacted PBPP247 and spoke to PC077 to inform them of the occurrence. On December 2nd, 2014, at approximately 9:31 p.m., Mr. Williams contacted Pennsylvania State Police and spoke to Trooper Hampton who confirmed that the escape packet was received.

*Id.* at 15-17.

On cross-examination, Ms. Faison acknowledged that, although she worked directly out of the regional office, she was familiar with Kintock Hall. *Id.* at 19-20. She further acknowledged "Kintock houses offenders in a few different classification statuses," such as parole violators, parolees, and pre-release. *Id.* at 20. Ms. Faison admitted that she had never met Appellant and that she did not have any personal knowledge of the December 2, 2014 incident. Finally, she also acknowledged that she did not write up Appellant's incident report.

Next, Ms. Van Fleet testified that she worked as an assistant district attorney in the east bureau of the trial division at the District Attorney's Office. *Id.* at 22. She testified that she received a two-page letter from Appellant, "a few days prior to the first trial listing[.]" *Id.* at 24. After the

letter was introduced and admitted into evidence without objection, Ms. Van Fleet read portions of it into the record:

> To whom it may concern at the district attorney's office, my name is [Appellant], 714571. I'm being held at CFCF for a[n] escape charge, which I was accused for walking away from Kintock half-way house. My case number is CP51CR0000048-2015. I was offered one-and-a-half to three years for this case. Please let me explain. That's 18 months. Then parole is going to give me a 18 month hit and going to take all my street time, which is 17 months. That's almost four-and-a-half years **for walking away from a half-way house**.

*Id.* at 27-28 (emphasis added).

In response, Appellant testified on his own behalf. He testified that, on November 30, 2014, he arrived at the Kintock Hall facility, where he was residing on the day of the incident. *Id.* at 36. Appellant testified that he was designated a parolee at Kintock Hall, where he was placed for being delinquent on his parole. *Id.* at 36-37, 46. He, however, testified that the Board did not revoke his parole until March 12, 2015, when it disposed of the technical violations that landed him at Kintock Hall. *Id.* at 37-38. Thus, Appellant maintained that, while he was at Kintock Hall, he had not been adjudicated a parole violator. Rather, he was merely a parolee awaiting the disposition of the underlying violations.

Thus, based upon the foregoing and consistent with *Maldonado*, we agree with the trial court's conclusion that Appellant's conviction for escape was supported by sufficient evidence of record. Here, the fact that Appellant was designated a parolee is immaterial. As we noted in *Maldonado*,

Section 5121 does not apply to parolees who have been arrested for parole violations and placed in a detention facility, because such parolees have no reasonable expectation that they retain the liberties and freedoms customary to a person operating under supervision of parole. As the trial court found:

> [Appellant] was housed at Kintock not as a condition of his parole but **_pending the outcome_** of his violation of parole hearing. To seek emergency medical attention, [Appellant] needed to be granted leave to go to the hospital and was accompanied by a member of Kintock staff. From these facts, it is reasonable to infer that [Appellant] was confined at Kintock. [Appellant] was not free to come and go as he pleased, and his liberty was restrained pending the outcome of his alleged parole violations.

Trial Court Opinion, 4/18/16, at 6 (emphasis added). Moreover, when Appellant left without permission from the hospital on December 2, 2014, he was in detention at Kintock Hall. Accordingly, the evidence here is sufficient to establish the element of "official detention" for purposes of convicting Appellant of escape pursuant to Section 5121(a).

We next address Appellant's argument that this matter should be remanded to the trial court for a new trial or a hearing on after-discovered evidence because while this case was pending on appeal he received a letter from the Board on March 3, 2016, confirming that he was designated as a parolee on the day he fled from Temple Hospital without authorization.

Rule 720, relating to post-sentence procedures and appeal, provides in pertinent part:

(C) **After-Discovered Evidence.** A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery.

Pa.R.Crim.P. 720(C); ***Commonwealth v. Castro***, 93 A.3d 818, 828 (Pa. 2014) (noting that Rule 720(c) requires a motion for after-discovered evidence to be filed promptly upon the discovery of such evidence). The Note to Rule 720 states that "after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge. It is well-settled that to obtain relief, the after-discovered evidence must meet a four-prong test:

> (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely. At an evidentiary hearing, an appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted.

***Commonwealth v. Rivera***, 939 A.2d 355, 359 (Pa. Super. 2007) (citation omitted), ***appeal denied***, 958 A.2d 1047 (Pa. 2008).

Instantly, we conclude that the Board's March 3, 2016 letter does not constitute after-discovered evidence, as it is merely corroborative or cumulative of Appellant's argument, which we addressed above, that he was on parole on December 2, 2014. In other words, the letter may best be described as a different source for the same fact, *i.e.*, Appellant was on parole on the day in question. Even if the Board's letter were after-

- 11 -

discovered evidence, it would not compel a different outcome with respect to Appellant's conviction for escape. As we discussed earlier, it is immaterial whether Appellant was designated as a parolee at Kintock Hall awaiting formal adjudication by the Board of his technical violations. Under *Maldonado*, once a parolee, such as Appellant here, has been arrested and detained for technical parole violations prior to a formal adjudication of such violations by the Board, he can hold no reasonable expectation that he retains the liberties and freedoms customary to a person operating under supervision of parole. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed. Petition to vacate and remand denied.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 12/23/2016*

- 12 -