J-A33004-16

2017 PA Super 135

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT WILLIAM TREECE | |
| Appellant | No. 115 WDA 2016 |

Appeal from the Judgment of Sentence March 30, 2015
In the Court of Common Pleas of Greene County
Criminal Division at No(s): CP-30-CR-0000270-2014

BEFORE: LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

OPINION BY LAZARUS, J.: **FILED MAY 5, 2017**

Robert William Treece appeals from the judgment of sentence, entered in the Court of Common Pleas of Greene County, following his conviction for escape.[1] Upon review, we vacate the judgment of sentence.

The trial court summarized the relevant facts of this matter as follows:

On June [17], 2015, [Robert Treece] was arrested for violating a [p]rotection from [a]buse order and taken to the Cumberland Township Police Department. At the time of his arrest, [Treece] complained of feeling ill. EMS took [Treece] to the local hospital cuffed to the gurney.

After being seen in the emergency room, [Treece] was admitted to the hospital for medical treatment and remained under guard of the Cumberland Township Police in handcuffs. Sometime

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5121(a).

afterwards, the [p]olice [o]fficers removed the handcuffs and left the examination room [and hospital entirely].

Sometime after 3:00 pm, [Treece], with no law enforcement present, decided he wanted to return home and with the assistance of a nurse, removed his IV and walked out of the hospital.

On June [20], 2014, Cumberland Township Police took [Treece] into custody on an unrelated matter and on June [30], 2014[,] filed charges against [Treece] for [e]scape [for leaving the hospital].[2]

Trial Court Opinion, April 4, 2016, at 1-2.

A jury trial was held, and on December 4, 2014, Treece was found guilty of escape. The trial judge, the Honorable William R. Nalitz, P.J., retired on December 31, 2014. The Honorable Farley Toothman, P.J., sentenced Treece on March 30, 2015, to 11 1/2 to 23 months' incarceration in the county jail, to be served concurrently with his other unrelated sentences. Treece filed a timely post-sentence motion seeking a judgment of acquittal, and on December 2, 2015, that motion was denied.

On January 4, 2016, Treece filed a timely notice of appeal. The sentencing court ordered him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Treece filed

_____

[2] In addition to escape, Treece was originally charged at this docket number with flight to avoid apprehension. 18 Pa.C.S. § 5126(a). After the Commonwealth rested its case, Treece moved for judgment of acquittal on both charges asserting that elements of each offense had not been proven. The court initially denied both motions. N.T. Trial, 12/4/14, 62-69. Before closing arguments, the court reconsidered the motion for acquittal and subsequently granted it on the charge of flight to avoid apprehension. *Id.* at 95.

on February 2, 2016. On appeal, Treece raises the following issue for our review:

> Whether a person[,] who is arrested and taken to a hospital for treatment in handcuffs, then uncuffed when the police leave the hospital, and [has] no [outstanding] warrant of arrest for a crime or for an involuntary mental health commitment, after observation and assessment for at least two hours, walks out of the hospital, unguarded by anyone, is [] in "official detention" as an element [of] the crime of escape under 18 [Pa.C.S.] § 5121(a)?

Brief for Appellant, at 10.

> In considering sufficiency of the evidence claims,
>
> we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. . . . Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. Of course, the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part or none of the evidence presented.

*Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (en banc). The Commonwealth can satisfy its burden via wholly circumstantial evidence. *Id.*

Treece challenges the sufficiency of the evidence for his conviction for escape. Specifically, Treece asserts that the evidence presented by the Commonwealth was insufficient to demonstrate that he was in "official

detention" when he walked out of the hospital at least one hour after the police officers removed his handcuffs and left the premises.[3]

A person commits the offense of escape when he "unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period." 18 Pa.C.S. § 5121(a). "Official detention" is defined as:

> arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S.A. § 5121(e).

It is evident that Treece had been removed from the police station and transported to the hospital, and he was no longer in a "facility for custody of persons." *Id.* Furthermore, police removed Treece's handcuffs and left the hospital; accordingly, Treece was no longer in police custody. "Therefore, the question is whether the phrase 'any other detention for law enforcement purposes' applies to the facts of this case." *Commonwealth v. Santana*, 959 A.2d 450, 452 (Pa. Super. 2008). "Previously, we have interpreted this

---

[3] Importantly, there is no prohibition against releasing an arrestee before arraignment and then either re-arresting or subpoenaing the arrestee to appear at a later time for formal arraignment. *See Commonwealth v. Jenkins*, 454 A.2d 1004 (Pa. 1982); *Commonwealth v. Bernard*, 456 A.2d 1364 (Pa. 1963); *Commonwealth v. Sabb*, 409 A.2d 437, 443 (Pa. Super. 1979).

phrase to mean a seizure in which 'the police have restrained the liberty of a person by show of authority or physical force.'" *Id.* (quoting *Commonwealth v. Stewart*, 648 A.2d 797, 798 (Pa. Super. 1994)). "Any determination as to whether a seizure occurred is based upon the totality of circumstances and 'whether a reasonable person would have believed he or she was free to leave.'" *Santana*, 959 A.2d at 452 (quoting *Stewart*, 648 A.2d at 798).

In *Stewart*, police responded to a domestic disturbance complaint alleging that the defendant was carrying a firearm. Upon arriving at the scene, the officer began approaching the defendant's vehicle with his gun drawn, ordering the defendant to put his hands on the dashboard of his vehicle. The defendant immediately drove off, was apprehended a short while later, and charged with escape. In affirming the guilty verdict of the trial court, this Court explained:

> Under the circumstances presented in this case, it is clear that [the officer] exhibited a show of authority. It is inconceivable that a reasonable person would believe he or she is free to leave when a uniformed officer with a gun drawn has requested that person to turn the car off and to place his or her hands on the dashboard. We conclude, therefore, that [the officer's] show of authority was sufficient to place [defendant] in official detention as described in 18 Pa.C.S.A. § 5121. [Defendant's] decision to drive off in his car despite [the officer's] clear instructions, constituted the crime of escape, a flagrant and unlawful removal from official detention.

*Stewart*, 648 A.2d at 798-99.

Conversely, in **Commonwealth v. Woody**, 939 A.2d 359 (Pa. Super. 2007), a patrolling officer observed a vehicle that was partially within a parking space and partially blocking the roadway. Upon shining his spotlight towards the car, the officer noticed the defendant and a female possibly engaging in sexual activities. The officer began approaching the vehicle and the defendant drove off. After the defendant failed to use his turn signal, the officer activated his sirens and the defendant continued driving away. Shortly thereafter, the defendant abandoned the vehicle and tried to flee on foot. The officer, still in his vehicle, commanded the defendant to "stop and get on the ground." The defendant continued fleeing and eventually the officer caught him on foot. The defendant was found guilty of escape (among other charges) and appealed, arguing that he was not in "official detention" when he fled from the police officer. This Court, in reversing the defendant's conviction, reasoned:

> [I]n **Stewart**, we found that the officer's actions, namely, his approach of the [defendant's] stopped vehicle, with his weapon drawn, and his instructions that the [defendant] turn off his car and place his hands on the dashboard, constituted an official detention of the [defendant]. [T]here existed a momentary period in which the officer was able to demonstrate a show of authority to the [defendant], namely, when the [defendant's] vehicle was stopped with the [defendant] inside, so as to suggest to the [defendant] that he was being officially detained.
>
> In the instant case, however, the charge of escape was based entirely on [defendant's] failure to comply with [the officer's] instructions to "stop and get on the ground," which were uttered by the officer from his vehicle when [defendant] exited his own vehicle to flee on foot. At no time was [the defendant] actually

detained by the officer; indeed, the facts suggest exactly the opposite.

*Woody*, 939 A.2d at 362-63.

We note that both *Stewart* and *Woody* pertained to pre-arrest cases. Herein, however, police had already arrested Treece, placed him in handcuffs, taken him to the hospital, removed the handcuffs, and then left him at the hospital without police supervision. *Commonwealth v. Williams*, 2016 PA Super 301, ___ A.3d ___, (Pa. Super. filed Dec. 23, 2016) presents the closest factual scenario. In that case, the defendant violated his parole by changing residences without permission, and was ordered to live in a half-way house. During his stay there, he suffered a medical emergency and was taken to a hospital by an employee of the half-way house. Upon arrival, the defendant evaded his escort and fled the hospital. He was found guilty of escape and appealed the sentence asserting that he was not in "official detention" while in the half-way house because he was designated a parolee. This Court affirmed the trial court ruling that the defendant was not housed at the half-way house as a **condition** of his parole, but rather, he was housed there **pending the outcome** of his violation of parole hearing. Thus, the Court reasoned that he was confined to the half-way house and was not free to come and go as he pleased. Therefore, when he fled his escort upon arriving at the hospital, he was in official detention under section 5121(e).

We note two critical distinctions between *Williams* and the present case. First, in *Williams*, the defendant was a designated parolee who had

- 7 -

been arrested for a parole violation and placed in a detention facility. Our courts have recognized that parolees of this nature "have no reasonable expectation that they retain the liberties and freedoms customary to a person operating under supervision of parole." ***Willliams***, 2016 PA Super 301, at *5 (citing ***Commonwealth v. Maldonado***, 966 A.2d 1144 (Pa. 2009)). Conversely, in the instant matter, Treece was merely arrested and taken to the police station to await his arraignment before being taken to the hospital for medical treatment. He was not designated to a detention facility. Second, the defendant in ***Williams*** evaded his escort upon arriving at the hospital with the intent to flee the facility. Treece, on the other hand, never attempted to evade his police escort; rather, he walked out of the hospital over an hour after police removed his handcuffs and left the premises without explicitly specifying that he was required to remain. Additionally, Treece walked home and immediately went to work. In fact, when hospital personnel called the police station to inform them of the circumstances, the police on duty declined to issue a warrant or show any other authority over Treece.

While the aforementioned cases provide us guidance, we have found no case law interpreting a situation where a police officer removes an arrestee's handcuffs, leaves the hospital, and subsequently charges that arrestee with escape after he leaves treatment.

The reasonable person standard applicable to determining whether a citizen is in "official detention" mirrors the standard applied by the

Pennsylvania Supreme Court as well as the Supreme Court of the United States in analyzing the three categories of interactions between police officers and citizens within the context of searches and seizures. Therefore, we look to these cases for guidance.

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution protect citizens from unreasonable searches and seizures. *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014) (citation omitted). The Court in *Lyles* differentiated among the three categories of interactions between citizens and police, namely: a "mere encounter," an "investigatory detention," and "an arrest or custodial detention." *Id.* at 302. It is the analysis of the third category, "an arrest or custodial detention," that mirrors the reasonable person standard applied in "official detention" analyses in the escape context. The *Lyles* court explained:

> In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances [. . . .] The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and [our Supreme] Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

*Id.* at 302–03.

In **Commonwealth v. Freeman**, 757 A.2d 903 (Pa. 2000), a Pennsylvania state trooper observed two vehicles travelling closely together and seemingly jockeying for position in a "cat and mouse" fashion. **Id.** at 904. The trooper pulled over one car while another officer pulled over the other. The two officers received conflicting stories as to whether the two vehicles were travelling together. The trooper gave the defendant a written warning regarding the traffic violation and then informed her that she was free to leave. **Id.** at 905. The trooper returned to his patrol car and before defendant left, the trooper returned to her vehicle and questioned her again about whether the two vehicles were travelling together. When the two officers confirmed that the stories were conflicting, the trooper ordered the defendant to get out of her car. **Id.** He then received her consent to search the car, whereupon he discovered five bags of marijuana. The defendant was charged with possession of a controlled substance and possession with intent to deliver.

The defendant filed a pre-trial motion to suppress the evidence found during the vehicle search and her motion was denied. **Id.** at 906. She was subsequently found guilty of the aforementioned charges. The defendant appealed to the Superior Court, arguing that the evidence (marijuana) should have been suppressed because her consent to search the vehicle was the result of an illegal detention. **Id.** This Court upheld her conviction, reasoning that after the trooper returned her license and registration and told her she was free to leave, her detention had ended and any other

interaction between her and the officer was a "mere encounter." Therefore, her consent was given voluntarily and the search was valid. *Id.*

On allowance of appeal, our Pennsylvania Supreme Court found that, although the initial traffic stop was a lawful detention, once the trooper returned defendant's license and registration, issued her a warning, and informed her that she was free to leave, that lawful detention had "a clear endpoint." *Id.* at 907. The Court further reasoned that the "transition to and character of the subsequent interaction . . . supports the conclusion that [defendant] was subject to a second seizure" and that "[defendant] would have been entirely within her rights to drive away at that point." *Id.* Once the trooper returned to the defendant's car and ordered her to exit the vehicle, the Court found that a second separate seizure had taken place.

While *Freeman* was decided in the context of a challenge to an evidentiary ruling, we find its "reasonable person" analysis useful as a guide in determining whether Treece reasonably believed he was free to leave. As previously stated, Treece was taken to the hospital in handcuffs, and remained cuffed for a period of time until officers removed the handcuffs and left the hospital, leaving Treece in the hospital's care. After remaining at the hospital, unguarded, for at least an hour, Treece removed his IV with the help of a nurse. The nurse informed Treece that he was still in treatment and advised him against leaving; however, this advice was strictly medical and was unrelated to his status as a police detainee. After removing his IV, Treece calmly left the hospital and returned to work, never attempting to

conceal himself from the police. The nurse contacted the state police, who informed her that they would not pick up Treece without a warrant. Cumberland County police did not petition for an involuntary mental health commitment and never returned to the hospital for Treece. Furthermore, the police cancelled Treece's original arraignment hearing and did not reschedule it. Neither the officer nor Treece was aware of when a subsequent hearing would take place. It was not until Treece was later pulled over for a separate traffic violation that he was charged with escape.

We also note that the police never advised Treece that he was not free to leave the hospital. While this point is not dispositive, it lends support to the conclusion that a reasonable person in Treece's position would believe he was free to go. Just as in **Freeman**, Treece was very clearly in "official detention" while he was handcuffed and under guard of a police officer at the hospital. However, once the police officer removed the handcuffs and left the hospital, the "official detention" had a "clear endpoint." **Freeman**, 757 A.2d at 907. Treece did not immediately flee the hospital as soon as he was left unguarded, but rather, waited at least one hour before deciding to leave. He did not need to evade any guard, and in fact was assisted in removing his IV by the nurse on duty. Additionally, the hospital is not a delegated detention facility. At no point after walking calmly from the hospital did

Treece ever attempt to conceal himself or evade the police.[4]  **Watley**, **supra.**

Based on the foregoing, we find that the evidence presented at trial did not establish that Treece was subject to "official detention," as contemplated in the escape statute, when he left the hospital.  Accordingly, we reverse his conviction and vacate the judgment of sentence.

Judgment of sentence vacated.

Judge Solano joins the Opinion.

Judge Strassburger files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2017

---

[4] There is no indication in the record that Treece asked to go to the hospital as subterfuge to evade police or to prevent his arrest.