J-A33004-16

2017 PA Super 135

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT WILLIAM TREECE, | : | |
| | : | |
| Appellant | : | No. 115 WDA 2016 |

Appeal from the Judgment of Sentence March 30, 2015
In the Court of Common Pleas of Greene County
Criminal Division at No(s): CP-30-CR-0000270-2014

BEFORE:    LAZARUS, SOLANO, and STRASSBURGER,* JJ.

DISSENTING OPINION BY STRASSBURGER, J.: FILED: May 5, 2017

Because I believe the trial testimony established that Treece was subject to official detention as contemplated by the escape statute, I would affirm his judgment of sentence. Accordingly, I respectfully dissent.

According to the relevant statute, "official detention" is defined as "arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes[.]" 18 Pa.C.S. § 5121(e). The learned Majority opines that a reasonable person in Treece's situation would conclude he or she was free to leave the hospital because the police removed his handcuffs and "never advised Treece that he was not free to leave the hospital." Majority Opinion at 12. However, the record establishes that Treece was aware he was under

_____

*Retired Senior Judge assigned to the Superior Court.

arrest at the time of his hospitalization and was scheduled to appear before a judge for arraignment.

Cumberland Township Police Chief Craig Miller testified on direct examination that Treece was handcuffed while in the ambulance and was accompanied to the Southwest Regional Medical Center by Detective Gismondi. N.T., 12/4/2014, at 42-43. Once Chief Miller arrived at the hospital, the following occurred.

[Assistant District Attorney]: Okay. What happened after you arrived?

[Chief Miller]: Treece was in one of the medical beds in the emergency department. Detective Gismondi was standing there, so I made contact with Detective Gismondi.

* * *

Q: And did you speak with anybody concerning -- I mean, at this point, so you have taken Treece into custody, he indicates that he needs some medical attention, he is taken to the hospital and you go.

Do you discuss with anybody what was going to happen next with not only his arraignment, but with your presence there?

A: Later on, we stayed there for several medical procedures, I know we walked down to x-ray with Treece and at one point, I did talk to the treating physician Dr. Aiello.

Q: Did he inform you how long Treece would be staying?

A: He said he was going to be in extended --

[Defense Counsel]: Object, Your Honor. We would oppose --

The Court: Sustained.

Q: At what point did you leave Southwest Regional?

A: After my discussion with Dr. Aiello.

Q: Oaky.  And did you return -- did you return to the hospital at any time after?

A: I did not.

Q: **Okay.  Did you speak with Treece while he was in the hospital?**

A: **Yes.**

Q: **Okay.   Did you inform him that he needed to be arraigned?**

A: **Yes.**

Q: **Okay.  Did you indicate that you would be returning for him?**

A: **Yes.**

Q: **Okay.  And so he knew that you would be returning for him, and did he respond in any way to that information?**

A: **No.**

*Id.* at 43-44 (emphasis added).[1]

Chief Miller testified that he removed Treece's handcuffs and left the hospital because he was unsure of how long Treece would need to remain in the facility.  *Id.* at 61-62.  After he was informed that Treece had left the

---

[1] The arraignment was rescheduled to occur upon Treece's release from the hospital, but no date was fixed. N.T., 12/4/2014, at 55.

hospital, Chief Miller testified that he attempted to locate Treece. *Id.* at 45-46. This effort was hampered by the fact that Cumberland Township is small and often only has one or two officers on duty per shift. *Id.* Treece was eventually apprehended and arraigned. *Id.*

The foregoing testimony establishes that Treece knew he was subject to official detention, yet made the conscious choice to leave hospital grounds. The Majority's analysis focuses on the time Treece waited before leaving the hospital, his calm demeanor upon exiting, and the fact that he did not attempt to conceal himself or evade the police, Majority Opinion at 12; however, a defendant's actions after the escape have no bearing on whether he unlawfully removed himself from official detention. 18 Pa.C.S. § 5121(a).

Further, the statute does not require detention to be consistent. Rather, the statute provides explicitly that "[i]rregularity in bringing about or maintaining detention … shall not be a defense to prosecution under this section." 18 Pa.C.S. § 5121(c). Thus, it is immaterial that the responding officers left the hospital during Treece's treatment: he was aware he was under arrest and that he was scheduled to be arraigned. Irregular maintenance of the official detention is not a defense to the charge of escape.

Viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, as we must, I find the evidence sufficient to support Treece's escape conviction and, accordingly, would affirm his judgment of sentence.