J-S09005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
               v.                   :
:
:
VASKAN OMANDA JOHNSON        :
:
           Appellant        :   No. 850 EDA 2025

Appeal from the Judgment of Sentence Entered February 11, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002747-2023

BEFORE:    MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                  **FILED MAY 19, 2026**

Vaskan Omanda Johnson (Appellant) appeals from the judgment of sentence entered following his nonjury convictions of one count each of simple assault – bodily injury, recklessly endangering another person (REAP), and harassment.[1] After careful review, we affirm.

On January 2, 2023, "a series of verbal disputes" between Appellant and his paramour, Antoinette Fraser (Complainant), ended in a physical altercation. Trial Court Opinion, 8/26/25, at 3. The couple first argued after Appellant received a phone call from another woman. *See* N.T., 12/20/24, at 21. Within the next hour, a second woman (different than the woman on the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2701(a)(1), 2705, 2709(a)(1).

phone) arrived at Appellant's door and indicated that she and Appellant were in a relationship. *Id.* Appellant asked the second woman to leave, and she did. *Id.*

Later, Appellant and Complainant went outside—into the alley behind Appellant's house—because Appellant had agreed to help Complainant with her vehicle, which was "making a noise." *Id.* at 21-22. While they were outside, Appellant received another phone call and became agitated. *Id.* at 22-23. Because Complainant was upset, she drove around the block and returned to Appellant's house, parking her vehicle in front of Appellant's truck. *Id.* at 23. At that time, Appellant was in his truck with the doors closed and the windows up. *Id.* Complainant approached Appellant's vehicle and knocked on the window, asking to speak with him. *Id.* at 23-24. After the couple talked through the window for a period of time, Appellant exited his vehicle. *Id.* at 24.

The trial court summarized the trial testimony concerning the subsequent physical altercation as follows:

> [Complainant] testified Appellant pushed her against an outside garage wall at his home, and began choking her. [Complainant] had difficulty breathing. Appellant then began pushing and punching [Complainant], knocking her to the ground. Appellant continued to strike [Complainant] with both an open hand and a closed fist while she struggled on the ground. [Complainant] yelled for help and a neighbor, Kenneth Robinson [(Mr. Robinson)], came over and helped separate [Appellant and Complainant]. [Complainant] suffered minor injuries. …
>
> Both [Complainant] and Mr. Robinson testified to Appellant getting in his truck and driving recklessly in an effort to leave

- 2 -

before police arrived. Appellant drove sharply in reverse, nearly striking Mr. Robinson. Appellant then accelerated forward and struck [Complainant's] parked car. Then he "sped off." …

Trial Court Opinion, 8/26/25, at 3-4 (citations to record omitted).

Mr. Robinson called 911 to report the incident. Upon his arrival at the scene, Upper Darby Police Officer Adam Wheatley (Officer Wheatley) observed that Complainant was bleeding near her right eye. Affidavit of Probable Cause, 1/2/23. Complainant was transported to the hospital. Police subsequently took Appellant into custody. Complainant detailed injuries to her wrist, a finger on her right hand, and her left shoulder resulting from the altercation. *See* N.T., 12/20/24, at 39. Complainant also incurred scrapes near her right eye and on her right leg, as well as minor bruises. *Id.*

The case proceeded to a bench trial on December 20, 2024. The Commonwealth offered the testimony of Complainant, Officer Wheatley, and Mr. Robinson. Appellant testified on his own behalf. The trial court convicted Appellant of the above-described offenses, and acquitted him of one count each of simple assault – physical menace and terroristic threats.[2]

On February 11, 2025, the trial court sentenced Appellant to an aggregate 2 years' probation. The trial court specified that Appellant could petition to terminate his supervision after 18 months, if he incurred no violations or new arrests. Sentencing Order, 2/11/25. Additionally, the trial

---

[2] 18 Pa.C.S.A. §§ 2701(a)(3), 2706(a)(1).

court ordered Appellant to complete anger management classes during his supervision and to have no contact with Complainant. The court imposed restitution totaling $8,094.00 for Complainant's medical expenses.

Appellant timely filed a post-sentence motion challenging the weight and sufficiency of the evidence. The trial court denied Appellant's post-sentence motion. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for review:

1. Was the evidence insufficient to support finding Appellant guilty beyond a reasonable doubt on the charge of [REAP]…?

2. Was the evidence insufficient to support finding Appellant guilty beyond a reasonable doubt on the charge of simple assault…?

3. Was the evidence insufficient to support a finding of guilt beyond a reasonable doubt on the charge of harassment…?

4. Did the trial court err and abuse its discretion by finding [the verdicts] of simple assault, [REAP], and harassment, [were] against the weight of the evidence, where [Complainant] provided testimony that was illogical, irrational, and unbelievable, and Appellant provided credible and supported testimony, including regarding his good character?

Appellant's Brief at 6-7 (issues renumbered for ease of disposition).

Appellant's first three claims challenge the sufficiency of the evidence supporting his convictions.[3] "A claim challenging the sufficiency of evidence

_____

[3] In contrast to his statement of questions involved, the argument section of Appellant's brief combines the three sufficiency challenges into one section, designating a separate subsection to each conviction. We consider each of
*(Footnote Continued Next Page)*

- 4 -

is a question of law, and as such the standard of review is *de novo* and the scope of review is plenary." ***Commonwealth v. Shaw***, 203 A.3d 281, 283 (Pa. Super. 2019).

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. … Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a[n appellant's] crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa. Super. 2019) (citation omitted).

In his first claim, Appellant contends the evidence was insufficient to sustain his conviction of REAP. Appellant's Brief at 26. Appellant claims his conduct did not put Complainant at risk of death or serious bodily injury. ***Id.*** at 27. Appellant acknowledges his vehicle struck Complainant's vehicle twice

_____

Appellant's sufficiency claims separately, in the manner set forth in his statement of questions involved.

- 5 -

as he attempted to leave the area. *Id.* However, Appellant points to Mr. Robinson's testimony that Appellant's reversal of his vehicle into Complainant's vehicle appeared to be an accident. *Id.* at 28-29; *see also id.* at 29 (arguing that "individuals are generally not charged with [REAP] for a fender bender."). Appellant also argues that Complainant was standing outside her vehicle, and though she described herself as being "close enough that her hand was on the door to [her] vehicle[,]" Appellant's vehicle did not strike Complainant directly. *Id.* at 27-28. Further, Appellant points to a lack of substantive evidence (such as bruising around Complainant's throat) that he choked Complainant. *Id.* at 29-30.

The Crimes Code defines the offense of REAP as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "Serious bodily injury" is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 2301.

Further, "[t]he *mens rea* for recklessly endangering another person is a conscious disregard of a known risk of death or great bodily harm to another person." *Commonwealth v. Hopkins*, 747 A.2d 910, 916 (Pa. Super. 2000) (citation omitted); *see also* 18 Pa.C.S.A. § 302(b)(3) (providing that "[a] person acts recklessly … when he consciously disregards a substantial and

unjustifiable risk that the material element [of the offense] exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation."). This Court has explained that "the Commonwealth must prove the existence of an actual present ability to inflict harm to another." **Shaw**, 203 A.3d at 284; **see also Commonwealth v. Edwards**, 229 A.3d 298, 312 (Pa. Super. 2020) ("Danger, not merely the apprehension of danger, must be created." (citation omitted)).

Here, the trial court concluded the evidence was sufficient to sustain Appellant's REAP conviction, reasoning as follows:

> Appellant recklessly operated his … truck in a narrow alleyway with two people in close proximity. Mr. Robinson was standing [next] to the driver's side of the [truck] when Appellant lurched the truck in reverse while his driver's door was open. [Appellant's] driving was so reckless, Mr. Robinson had to jump out of the way to avoid being struck. [Complainant] was [at] Mr. Robinson's side and was also put in danger. This court found this testimony credible[,] and it was corroborated with photographs of the damage caused in the collision with [Complainant's] vehicle moments later.

Trial Court Opinion, 8/26/25, at 5-6 (citations to record omitted).

Upon review, we agree that the evidence was sufficient to sustain Appellant's conviction of REAP. Unlike the trial court, we conclude **all** of Appellant's actions throughout the altercation—not only his attempts to flee in his truck—placed Complainant in danger of serious bodily injury. **See**

- 7 -

*Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (stating that an appellate court may "affirm a valid judgment or verdict for any reason appearing as of record.") (citation omitted); *see also Commonwealth v. Banniger*, 303 A.3d 1085, 1091 (Pa. Super. 2023) ("Our inquiry is whether viewing **all of the evidence admitted at trial** in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt." (emphasis added; citation omitted)).

Complainant testified that, following one of the couple's verbal disputes, Appellant got out of his vehicle and "pushed [Complainant] up against the garage wall and was choking [Complainant]." N.T., 12/20/24, at 24. Complainant explained that Appellant's hands were wrapped around her neck, and it was difficult for her to breathe. *Id.* at 24-25. Complainant defended herself by pushing and hitting Appellant. *Id.* at 25. Complainant described what next transpired:

> We struggled against the wall for a while. When [Appellant] did finally stop choking me, we moved away from the wall slightly. [Appellant] hit me, pushed me. I fell behind -- there was … an opening right by the steps in the garage. I fell right there behind the steps. At that point, [Appellant] got on top of me, his knees in my chest. [Appellant] held one of my hands above my head and continued to hit me, punch me.

*Id.*; *see also id.* at 26 (Complainant testifying, "[Appellant] hit me both ways, with open hand, with closed fist, throughout the entire ordeal.").

- 8 -

Complainant hit the back of her head on the ground when she fell. *Id.* at 26. After Complainant fell to the ground, she testified, "[Appellant] got on top of me[; Appellant] continued to hit me in my chest, my hand, my shoulders, pretty much anywhere he could get a hit in." *Id.*; *see also id.* (Complainant stating that she could not recall how many times Appellant hit her while she was on the ground, but confirming he hit her more than twice), 27 ("[H]e just continued to hit."). Complainant also stated that Appellant stuck his thumb into her eye and scratched her between her right eye and her nose. *Id.*

Complainant testified that she was yelling for help, and Appellant finally got off of her when neighbors came outside. *Id.* at 27-28. Appellant then reentered his vehicle, after which Complainant stood near the vehicle, and told Appellant he could not leave because the police were on their way. *Id.* at 31. According to Complainant, Appellant threatened that he would run her over. *Id.* Complainant moved away from Appellant's vehicle. *Id.*; *see also id.* at 32 (Complainant indicating that she believed Appellant would run her over). While Complainant stood next to her own car, with her hand on the handle of the driver's side door, Appellant "put his car into [] drive and tr[ied] to get past. [Appellant] hit [Complainant's] car at that point." *Id.* at 31-32. Appellant then reversed his vehicle and drove into Complainant's car again. *Id.* at 31.

The Commonwealth also presented the testimony of Mr. Robinson, who lives down the street from Appellant. Mr. Robinson testified that he was outside when he heard someone yelling, "Call 911." *Id.* at 119. Mr. Robinson saw a white truck and walked towards it. *Id.* at 119-21. When he approached, Mr. Robinson saw Appellant and Complainant, who were both standing near the truck. *Id.* at 121; *see also id.* (Mr. Robinson stating that Complainant was trying to prevent Appellant from leaving).

According to Mr. Robinson, Complainant was pulling on Appellant's clothing. *Id.* at 122. Mr. Robinson testified that, at the same time, Appellant was pushing and punching Complainant with a closed fist. *Id.* at 122-23; *see also id.* at 123 (Mr. Robinson stating that Appellant punched Complainant at least five times). Mr. Robinson saw Appellant's punches land on Complainant's shoulder. *Id.* at 124; *see also id.* at 134 (Mr. Robinson indicating he never observed Complainant punching Appellant).

Mr. Robinson testified that he positioned himself between Appellant and Complainant "to avoid anybody getting any injuries." *Id.* at 124. Ultimately, Mr. Robinson testified, Appellant got into his truck, leaving the driver's side door open. *Id.* at 125. Mr. Robinson explained what happened next:

> When [Appellant] finally got in the truck, he … put the thing in gear, I guess, he's putting it in drive, but end[ed] up putting it in reverse, and I had to jump out of the way, because I didn't want to be getting struck by the door.

- 10 -

***Id.*** Mr. Robinson testified that when Appellant again moved his truck, he struck another vehicle. ***Id.*** at 125-26. Mr. Robinson called 911 as Appellant drove away. ***Id.*** at 127.

The above-described testimony, viewed in the light most favorable to the Commonwealth as the verdict winner, established that Appellant recklessly placed Complainant in danger of serious bodily injury when he wrapped his hands around Complainant's neck, making it difficult for her to breathe; pushed Complainant, causing her to fall and hit her head; held one of Complainant's hands above her head while she was on the ground and hit and scratched her; and repeatedly punched Complainant. Appellant then got into his truck and, in his haste to flee, struck Complainant's vehicle, which she was standing immediately beside at the time. ***See Commonwealth v. Rahman***, 75 A.3d 497, 502-03 (Pa. Super. 2013) (concluding the appellant's REAP conviction was supported by sufficient evidence, where the appellant threw punches at a police sergeant on a stairwell; the appellant's "physical aggression easily could have caused [the sergeant] to lose his footing and fall down the stairs near the edge of the fourth floor balcony"); ***see also Commonwealth v. Teasley***, 339 A.3d 425, 2624 EDA 2023 (Pa. Super. 2025) (unpublished memorandum at 16) (concluding that evidence was sufficient to sustain the appellant's REAP conviction, where the appellant picked up and pushed his father into a glass-fronted cabinet on which his

father hit his head, shattering the glass).[4] This trial testimony was specifically credited by the trial court, and we will not disrupt the court's credibility findings. Trial Court Opinion, 8/26/25, at 3-4 (stating the court found Complainant's and Mr. Robinson's testimony to be credible); *see also Commonwealth v. Treece*, 161 A.3d 992, 994 (Pa. Super. 2017) ("[T]he fact-finder is free to believe all, part or none of the evidence presented." (citation omitted)).

That Complainant was fortunate enough to avoid serious bodily injury as defined by statute is of no moment, as the offense REAP does not require the actual infliction of serious bodily injury. *See Commonwealth v. Cianci*, 130 A.3d 780, 782-83 (Pa. Super. 2015) (while comparing the offenses of REAP and aggravated assault for merger purposes, noting that "an individual could recklessly place another in danger of serious bodily injury without attempting to cause (or actually causing) serious bodily injury"). Accordingly, Appellant's first claim lacks merit.

In his second claim, Appellant argues the evidence presented at trial was insufficient to sustain his conviction of simple assault. Appellant's Brief at 19. Appellant concedes that Complainant sustained bodily injury. *Id.*; *see also id.* n.2. However, Appellant asserts the Commonwealth failed to establish that his conduct was the cause of Complainant's injuries. *Id.* at 20-

---

[4] Pursuant to Pa.R.A.P. 126(b), this Court's unpublished memorandum decisions filed after May 1, 2019, may be cited for their persuasive value.

21.  According to Appellant, many of Complainant's complained-of injuries were not corroborated by Mr. Robinson's observations.  *Id.* at 22.  Appellant also claims that, even if he caused Complainant's injuries, he did not do so intentionally, knowingly, or recklessly.  *Id.* at 23-24.  Appellant describes his physical contact with Complainant as an attempt to "remove himself from Complainant's aggression."  *Id.* at 25.

Additionally, Appellant asserts that despite Complainant's allegations that Appellant choked her, "there is no mention of any bruising or redness to Complainant's throat, as would be present if any choking had occurred. Although photographs taken by police and Complainant herself were introduced [at trial], there was no substantive evidence as to any alleged choking."  *Id.*

Appellant was convicted of simple assault under 18 Pa.C.S.A. § 2701(a)(1), which provides that "a person is guilty of assault if he … attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]"  The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain."  *Id.* § 2301.  "Substantial pain may be inferred from the circumstances surrounding the physical force used."  *Commonwealth v. Duck*, 171 A.3d 830, 836 (Pa. Super. 2017).

Instantly, the trial court concluded Appellant's actions (*i.e.*, choking, pushing, and punching Complainant) were sufficient to establish the requisite *mens rea*.  Trial Court Opinion, 8/26/25, at 5.  The trial court also points to

- 13 -

the photographs, which were admitted into evidence at trial, that depict the scratches and wounds Complainant sustained during the physical altercation. *Id.*; *see also* Commonwealth's Exhibits C-3 and C-4.[5]

As noted above, Appellant does not dispute that Complainant suffered bodily injury. For the reasons detailed in connection with Appellant's first claim,[6] we agree with the trial court that the evidence sufficiently established that Appellant recklessly caused bodily injury to Complainant. *See Commonwealth v. Hodges*, 193 A.3d 428, 430 (Pa. Super. 2018) (concluding evidence was sufficient to sustain the appellant's simple assault conviction, where the appellant placed the complainant in a chokehold; punched and kicked the complainant; and fled immediately following the incident). Thus, Appellant's second claim merits no relief.

In his third claim, Appellant argues his harassment conviction was not supported by sufficient evidence. Appellant's Brief at 30. Specifically, Appellant claims he did not subject Complainant to physical contact with the intent to harass, annoy or alarm her. *Id.* at 31. Contrary to the trial court's

_____

[5] The photographs are not contained in the certified record.

[6] We acknowledge that simple assault is not a lesser included offense of REAP. *See Commonwealth v. Calhoun*, 52 A.3d 281, 286 (Pa. Super. 2012). However, as Appellant concedes that Complainant suffered bodily injury, the only remaining question was whether Appellant's conduct was intentional, knowing, or reckless.

reasoning, Appellant states Complainant's allegation that he choked Complainant was not sufficient, by itself, to sustain his conviction. **Id.** at 32.

Appellant was convicted of harassment under section 2709(a)(1) of the Crimes Code, which provides as follows:

**(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

(1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]

18 Pa.C.S.A. § 2709(a)(1). The specific intent to harass, annoy or alarm "may be inferred from the totality of the circumstances." **Commonwealth v. Coniker**, 290 A.3d 725, 734 (Pa. Super. 2023) (citation omitted).

Here, the trial court concluded that Appellant's actions (*i.e.*, choking, pushing, and punching Complainant) sufficiently established his intent to harass, annoy or alarm. Trial Court Opinion, 8/26/25, at 5. Additionally, the trial court emphasized that Appellant "struck [Complainant] with at least five blows to the body." **Id.**

We agree with the trial court that the evidence, viewed in the light most favorable to the Commonwealth, was more than sufficient to sustain Appellant's harassment conviction. **See** Trial Court Opinion, 8/26/25, at 5. Appellant repeatedly subjected Complainant to physical contact by punching, pushing, and choking her. He also threatened additional contact by telling Complainant he would run her over with his truck. From the circumstances,

it was reasonable for the trial court, as the finder of fact, to infer that Appellant did so with the intent to harass, annoy, or alarm Complainant. *See Commonwealth v. Bettis*, 347 A.3d 779, 792 (Pa. Super. 2025) (concluding the evidence sufficiently established the appellant's intent to harass, annoy or alarm school officers escorting him from the school grounds after he repeatedly refused requests to leave, where the appellant "br[ought] his fist back" as if to punch one of the officers); *see also Commonwealth v. Emler*, 903 A.2d 1273, 1279 (Pa. Super. 2006) (where the appellant grabbed the victim in a chokehold, "pinned him to the ground with [the appellant's] heavier body, and struggled with [the victim] for control of a loaded shotgun[,]" concluding "[t]here can be no doubt that these facts support a conviction under Section 2709(a)(1) in that there was indeed physical contact and, under the circumstances, a reasonable inference of intent to alarm and distress."). Appellant's third claim therefore lacks merit.

In his fourth and final claim, Appellant asserts his convictions are against the weight of the evidence.[7] *See* Appellant's Brief at 33-46. Appellant argues that Complainant's testimony was "not supported by logic, rationality, or concepts of reasonable human behavior." *Id.* at 34. Generally, Appellant contends his recounting of the events was more credible and logical than Complainant's testimony. *See id.* at 35-38, 43-45. According to Appellant,

_____

[7] Appellant preserved his weight claim in his timely post-sentence motion. *See* Pa.R.Crim.P. 607(A).

Complainant was the initial aggressor, and Appellant acted to remove himself from the situation. *Id.*; *see also id.* at 36 (Appellant stating he had locked himself in his bedroom to avoid a confrontation, but Complainant kicked down his door). Appellant argues that, "[u]nfortunately, Complainant's actions [were] simply not the actions that a person who was actually calm and in control of their emotions would take." *Id.* at 38.

> According to Appellant,
>
> Complainant refused to acknowledge any clear signs that Appellant did not wish to continue arguing. Specifically, Appellant took the following steps … to remove himself from Complainant's warpath: locking himself in his car following Complainant's verbal aggression towards Appellant during the phone call with Appellant's friend; telling Complainant to leave his residence; ignoring any calls and texts made by Complainant as she was driving away from Appellant's home; and initially refusing to exit the vehicle or speak with Complainant after she returned to Appellant's home. A calm and rational person does *not* ignore all of these indications that Appellant was not interested in continuing any conversation at that time.

*Id.* at 38-39 (emphasis in original; citations to record omitted). Appellant contends that Complainant's testimony was untruthful. "After[ ]all," Appellant states, "hell hath no fury like a woman scorned." *Id.* at 42.

By contrast, Appellant asserts the evidence established his good character. *Id.* at 43. Appellant also emphasized that he sustained injuries during the physical altercation. *Id.*; *see also id.* (stating Complainant punched Appellant in the mouth). Appellant claims that Mr. Robinson's testimony supports Appellant's own description of events, as well as

Appellant's assertions that he acted solely in an attempt to remove himself from the situation. *Id.* at 44-45.

We apply the following legal principles when faced with a challenge to the weight of the evidence:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion. A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Hill*, 348 A.3d 264, 280-81 (Pa. Super. 2025) (citation and paragraph break omitted).

"To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa. Super. 2022) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted).

Instantly, the trial court concluded its verdict was not against the weight of the evidence. The trial court, the fact finder in the instant bench trial, found

both Complainant's and Mr. Robinson's testimony to be credible. Trial Court Opinion, 8/26/25, at 3-4. Additionally, the trial court explained as follows:

[T]he evidence was consistent between [Complainant] and Mr. Robinson, who was simply a third[ ]party attempting to help. [Complainant's] testimony was also consistent with the prior statement [she] made to the police and introduced as Exhibit C-6. Mr. Robinson's trial testimony was also corroborated by the audio-recorded 911 call[,] which was made amidst the encounter. The audio recording was introduced as Exhibit C-8.

*Id.* at 8.

The trial court, as fact finder, was "free to believe all, none, or some of the evidence" and to assess the credibility of the witnesses. *Commonwealth v. Salinas*, 307 A.3d 790, 795 (Pa. Super. 2023) (citation and brackets omitted). Appellant asks us to reject Complainant's version of the events in favor of his own. This we cannot do. *See Commonwealth v. Diamond*, 83 A.3d 119, 134 (Pa. 2013) (stating that "credibility determinations rest solely within the purview of the fact-finder"); *Commonwealth v. Rayner*, 153 A.3d 1049, 1056 (Pa. Super. 2016) (stating that the weight of the evidence and credibility of witnesses are matters exclusively within the province of the finder of fact). We will not disturb the trial court's exercise of discretion in upholding the verdict, which is supported by the record and does not "shock the conscience of th[is C]ourt." *Arias*, 286 A.3d at 352 (citation omitted); *see also id.* ("A new trial should not be granted because of a mere conflict in the testimony"). Accordingly, Appellant's weight claim is without merit.

Based upon the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/19/2026