**Joseph P. MILLER, Jr., Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 24, 2003.

Decided Dec. 4, 2003.

David Crowley, Bellefonte, for petitioner.

Chad L. Allensworth, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, and COHN, Judge. and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.

Joseph P. Miller, Jr., appeals from an order of the Pennsylvania Board of Probation and Parole (Board) that denied his request for administrative relief and upheld penalties for technical parole violations. The Board concluded that there was substantial evidence to support the findings that Miller had violated three parole conditions by failing to maintain contact with his parole agent (# 3A), violating curfew (# 7 CT1), and failing to submit to urinalysis testing (# 7 CT2). On appeal we must decide two issues: 1) whether Miller *intentionally* violated the failure to report and curfew conditions and 2) whether the Board lacked "jurisdiction" to recommit him for failure to submit to urinalysis testing where he was, at the time, incarcerated on the other parole violation charges and, hence, allegedly not "on parole."

Miller was originally sentenced to imprisonment for 10–30 years for third degree murder and aggravated assault. He was paroled on December 1, 1997 to a community corrections center, at which time his maximum date was August 1, 2016, and he was required to report regularly to his parole officer as instructed. After having failed to report and using cocaine, he received a Level I Conference on January 15, 2003, and became subject to the following: 1) weekly reporting to Agent Jones at a designated location on Spring Garden Street in Philadelphia; 2) a special condition of curfew, requiring him to be in his approved residence between 8:00 p.m. and 6:00 a.m.; and 3) submitting a urine sample for testing each time he

met with his parole officer or upon request.

On January 21, 2003 Jones stopped at Miller's residence at 8:00 p.m. and discovered that he was not there. (N.T. 13–14). In addition, Miller failed to report the following day to the Spring Garden location, although he should have done so. On February 6, 2003, the Board issued a warrant to commit and detain and Miller was arrested later that same day by Board agents Jones and Nunez. After Miller was placed in the holding cell, Jones departed and, later that same day, Nunez' supervisor asked him to get a urine sample from Miller. Jones stated that Miller had assured him that he would provide a urine sample, but Nunez stated that, when he sought to obtain one, Miller claimed he could not comply because he had a urinary tract infection. (N.T. 18). This incident formed the basis for the charge of failing to submit to urine testing.

■ The Board held a technical parole violation hearing and recommitted Miller to serve nine months back-time as a technical parole violator, finding that he had committed all three violations. His request for administrative relief was denied and this appeal ensued.[1]

■ First, we begin our analysis by observing that Miller admits that he was not present at his approved residence on January 21, 2003 at 8:00 p.m., and that he did not report to the parole office the following day. Thus, the Board has met its burden to show, by a preponderance of the evidence, that the curfew and failure to report violations did occur.[2] However, Miller asserts that these violations were unintentional because he was, at that time, hospitalized in a mental ward, and was not released until February 6, 2003, when he signed himself out. He relies on *Hudak v. Pennsylvania Board of Probation and Parole*, 757 A.2d 439 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 565 Pa. 657, 771 A.2d 1291 (2001). In that case, we held that where the parolee had been hospitalized with a ruptured colon and, consequently, could not report for his curfew, he should not be recommitted because the parole violation required "some kind of fault" on the parolee's part. The critical distinction between that case and this one, however, is that in *Hudak* it was *undisputed* that the parolee was actually in the hospital at the relevant time. In this case, however, the parole agent disputed this fact. He testified that he had called the hospital repeatedly and that "he [Miller] was not there." (N.T. 12.) The public defender argues that the hospital was precluded from releasing this information under various confidentiality laws. While this may be true, he was still obligated to put on evidence to establish Miller's hospital stay. Miller claims he was never given any release papers and, so, could provide nothing more than his bare assertion that he had been there. In such

---

1. On appeal, our scope of review is limited to determining whether the Board committed a constitutional violation or an error of law and whether the findings of fact are supported by substantial evidence. *Slaymaker v. Pennsylvania Board of Probation and Parole*, 768 A.2d 417, 418 n. 1 (Pa.Cmwlth.2001). Substantial evidence has been defined as evidence that a reasonable mind would find sufficient to support a conclusion. *McCauley v. Pennsylvania Board of Probation and Parole*, 98 Pa.Cmwlth. 28, 510 A.2d 877 (1986).

2. In parole violation proceedings, the Board has the burden of proof to show, by a preponderance of the evidence, that the parolee violated the terms and conditions of parole. *Sigafoos v. Pennsylvania Board of Probation and Parole*, 94 Pa.Cmwlth. 454, 503 A.2d 1076, 1079 (1986). A preponderance of the evidence is proof that leads the fact finder to decide "that the existence of a contested fact is more probable than its nonexistence." *Id.*

circumstances, we conclude that the Board, acting within its province as the judge of credibility matters, *Sigafoos,* had substantial evidence to conclude that Miller had committed these two violations and had not shown a justifiable excuse for doing so.

■ With regard to the third violation, Miller does not dispute that he did not submit his urine for testing. While he argues that he was given only a small cup of water and did not have to urinate, the Board was free to reject this evidence, and clearly did so. More importantly, however, Miller asserts that he was no longer "on parole" at the time of his refusal and, so, could not violate a condition of parole. His theory is that, because he had already been *arrested and detained* earlier that day, his refusal to provide the urine sample did not occur "during the period of parole" as required for there to be a technical parole violation.

Our analysis of this issue begins with the language in Section 21.1 of what is commonly known as the Parole Act[3] and the recognition that the language used for *convicted* parole violators is different from that used for *technical* parole violators. Section 21.1 pertinently states:

**Commission of crime during parole; other violations of terms of parole**

(a) **Convicted Violators.** Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution of the Commonwealth who, *during the period of parole or while delinquent on parole,* commits any crime punishable by imprisonment, from which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record,

may, at the discretion of the board, be recommitted as a parole violator....

. . .

(b) **Technical Violators.** Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who, *during the period of parole,* violates the terms and conditions of his parole, other than by the commission of a new crime of which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere in a court of record, may be recommitted after hearing before the board.

In *Jackson v. Pennsylvania Board of Probation and Parole,* 114 Pa.Cmwlth. 270, 538 A.2d 147 (1988), a case falling under Section 21.1(a) of the Parole Act, the parolee was arrested on a "multitude of technical parole violations" and, while being detained for those charges, he stabbed a fellow inmate. Based on the stabbing incident, he was charged as a *convicted* parole violator. He asserted that, under Section 21.1(a), he should not have been so charged, because that statutory provision is limited to instances where the person has committed the act after having "been released from a penal institution or while delinquent on parole," and he had not been on release at the time of the stabbing incident. Section 21.1(a) of the Parole Act. This Court disagreed and stated that, while Jackson may have been incarcerated, his parole had not yet been revoked, nor had he yet been recommitted for the technical violation charges and so he was "clearly under the jurisdiction of the Board" and was "delinquent on his parole." *Jackson,* 538 A.2d at 149. We, thus, concluded that the stabbing incident occurred while he was still "on parole" within the meaning of Section 21.1(a) of the Act.

3. Act of August 6, 1941 P.L. 861, *as amended,* 61 P.S. § 331.21a(a). Section 21.1 was added by Section 5 of the Act of August 24, 1951, P.L. 1401.

Miller distinguishes *Jackson,* contending that the matter *sub judice* involves an arrest for technical violations (curfew and failure to report) and, while he was being held on those charges, he was charged with another *technical* violation (failure to submit to urinalysis testing). He correctly contends that this distinction places his case under Section 21.1(b) of the Parole Act, which, as previously noted, governs technical, as opposed to convicted, parole violations. Miller then argues that his failure to submit to urinalysis testing did not occur "during the period of parole," as that phrase is used in Section 21.1(b), because he had already been re-confined.

"Parole" has been defined as a method of rehabilitation that permits offenders to serve a period of their sentences outside of prison walls, subject to the terms and conditions imposed by the Commonwealth. *Rivenbark v. Pennsylvania Board of Probation and Parole,* 509 Pa. 248, 501 A.2d 1110 (1985). The essence of parole is the offender's release from prison prior to the expiration of his maximum sentence, conditioned upon his compliance with the terms and conditions of parole established by the Board. Wile, *Pennsylvania Law of Probation and Parole* § 1.6 (1993). While, in *Jackson,* the Court held that Jackson was "delinquent on parole," it was (1) using a statutory criterion applied only to *convicted* parole violators[4] and (2) referring to the technical violations Jackson had committed *before* his arrest. The Court also appeared to give, as an additional rationale for its holding, the fact that Jackson was awaiting his technical revocation hearing, and reasoned that, until the Board issued its recommitment order, Jackson remained "under its jurisdiction" and, hence, "on parole."

This added rationale, however, does not apply to *technical* parole violators. One re-arrested as a technical parole violator may wait months for a Board recommitment order. If the re-incarcerated parolee does not comply with the technical terms of parole during that period, he is a technical violator and as, such, would be subject to sanction. But, a re-incarcerated parolee could not, for example, comply with general parole conditions such as reporting to his designated parole office or living at his approved residence,[5] nor could he comply with such special parole conditions as, for example, maintaining employment. In short, the technical conditions of parole simply do not relate logically to the custodial situation.

Moreover, we can discern no public policy to be served in holding that an action that would be a violation of a technical condition if one remained at liberty should be treated as a technical parole violation when one has been re-incarcerated. The public policy, as to parole, clearly specifies that among the purposes of the parole system are the protection of the public's safety and the adequate supervision of the offender so that he can become a useful member of society. Section 1 of the Parole Act, 61 P.S. § 331.1. Once the offender is re-incarcerated, however, the offender's actions no longer place the public in danger, and the offender does not need the same type of supervision as when he was at liberty. This is why the statute clearly limits technical parole violations to those committed "during the period of parole." Finally, the fact that the legislature used *different phrases* for the two provisions in

---

4. While delinquency on parole is a type of technical parole violation, it means, in that context, that the parolee's whereabouts is unknown to the Board. That was clearly not the meaning of delinquency being discussed in *Jackson.*

5. *See* "General conditions of parole." 37 Pa. Code, § 63.4.

Section 21.1 must be given some import. *Cf. Buchko v. Unemployment Compensation Board of Review,* 196 Pa.Super. 559, 175 A.2d 914 (1962) (holding that word or phrase which has a clear meaning in one part of statute shall be construed to have the same meaning elsewhere in same section). Hence, we conclude that where, as here, the phrases contain slightly different language, subsections (a) and (b) of Section 21.1, although close, are not *identical* in meaning. Thus, we hold that one cannot commit a technical parole violation after he or she is re-incarcerated because one is no longer "on parole" within the meaning of Section 21.1(b) of the Parole Act.

Because we conclude that the Board had evidence to support the intentional violation of two conditions, but not the third, we vacate its order and remand for it to reassess the penalty imposed.

### ORDER

**NOW,** December 4, 2003, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is hereby vacated and this matter is remanded with directions that the Board reassess the penalty imposed.

Jurisdiction relinquished.