COMMONWEALTH of Pennsylvania, Appellant

v.

Felipo MALDONADO, Appellee.

Commonwealth of Pennsylvania, Appellant

v.

Reinaldo Ortiz–Santana, Appellee.

Superior Court of Pennsylvania.

Argued March 18, 2008.

Filed Jan. 27, 2009.

Reargument Denied April 2, 2009.

Jonathan H. Kurland, Asst. Dist. Atty., Reading, for Com., appellant.

Eric J. Taylor, Reading, for appellees.

BEFORE: STEVENS, LALLY-GREEN, and FITZGERALD,[*] JJ.

OPINION BY STEVENS, J.:

¶ 1 This is a consolidated appeal from the order entered by the Court of Common Pleas of Berks County granting Appellees' respective petitions for Writ of Habeas Corpus and dismissing the charge of Escape, 18 Pa.C.S.A. § 5121(a) that had been filed against each parolee for leaving a detainment facility without permission. The Commonwealth argues the trial court erred in concluding section 5121 necessarily excludes from its reach parole violators who have been arrested and placed in a facility pending their parole violation hearing. As we agree with the Commonwealth, we vacate and remand.

¶ 2 The trial court opinion below aptly describes the facts, which apply to both Appellees and are not in dispute, and the issue of statutory interpretation confronting this Court, as follows:

[Each Appellee] was on state parole and was believed to have committed technical violations of his parole conditions. [Each] was apprehended by his Parole Officer and sent to Penn CAPP. Penn CAPP is a program administered by a company called Firetree Ltd., which rents facilities on the grounds of the Conewago–Wernersville State Hospital in Berks County. Through a contract with the Pennsylvania Department of Corrections, the Pennsylvania Community Alternative to Prison Program (Penn CAPP) is administered. [Each] was taken to the Penn CAPP facility, and a detainer against [each] was lodged. No adjudication, either preliminary or otherwise, occurred prior to [each] walking away from the facility.

Upon admission to the facility, parolees are required to sign an "acknowledgement of status," which contains language in the nature of an "acknowledgment" that the defendant is no longer on parole but is rather in a "pre-release" status. There is no testimony to the effect that upon being apprehended for the alleged technical parole violations, that [each] was given a choice between being reincarcerated in a prison facility or being housed at Penn CAPP.

After approximately 14 days at Penn CAPP, a hearing is held to determine whether defendants are appropriately placed there. After such hearing, the Penn CAPP program continues for a

---

[*] Former Justice specially assigned to the Superior Court.

total of 90 days. At the end of 90 days, if the defendant has complied with all of the program's provisions, the defendant is released from Penn CAPP and no adjudication as to violation of parole is made.

[Each Appellee] argue[d below] that[,] irrespective of the "acknowledgement" contained in Exhibit 1 hereto, [ ] he was still on parole at the time of the incident [forming the basis for the escape charge] in question, and thus, the Commonwealth [was] unable to establish that [he] removed himself from "official detention" as that term is defined at 18 Pa.C.S.A. § 5121(e).

The Commonwealth argue[d below in each case] that since [each defendant] acknowledged, by signing the form [prior to his admission into Penn CAPP], [he] was no longer on parole but rather was in "pre-release" status. The Commonwealth further cites *Miller v. Pennsylvania Board of Proabation and Parole*, 837 A.2d 618 at 622 (Pa.Cmwlth. 2003) for the proposition that a person cannot commit a technical parole violation after having been reincarcerated because one is no longer on parole within the me[aning] of Section 21.1(b) of the Parole Act.

Trial Court Opinion dated 6/25/07 at 1–2.

 ¶ 3 In dismissing the escape charge in each case, the trial court determined the very language of the escape statute excluded parolees from being charged thereunder. Specifically, 18 Pa.C.S. § 5121 provides:

(a) **Escape.**—A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

 \* \* \*

(e) **Definition.**—As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S. § 5121(a) and (e). The issue presented, therefore, is whether Section 5121 necessarily excludes all parolees from its ambit, even those who have been arrested for violating terms of their parole, notified they are considered to be in "prerelease" status, and detained in an official housing facility from which they leave without permission prior to adjudication of their parole violation hearings.

¶ 4 Initially, our jurisprudence on section 5121 in the context of home confinement supports the conclusion that placement in Penn CAPP, though not a prison, may subject one to official detention as contemplated in the escape statute. In *Commonwealth v. Wegley*, 574 Pa. 190, 829 A.2d 1148 (2003), the Pennsylvania Supreme Court addressed the issue of whether the offense of escape can occur in the context of home confinement. Interpreting Section 5121 according to "the fair import of its terms" as required by 18 Pa.C.S. § 105, the Court construed "detention" broadly. *Id.* at 194–95 n. 5, 829 A.2d at 1151 n. 5 (noting cases recognizing various modes of detention). In so doing, it looked past the lack of a traditional institutional setting and instead found dispositive the actual effect of the confinement—a restraint of the person's liberty to come and go as he pleases and engage in outside activities. This effect constituted a "detention" under Section 5121.

¶ 5 Likewise, detainment in Penn CAPP constrains one's freedom of movement to within the confines of a housing facility such that placement there effects the kind of detention contemplated within the meaning of Section 5121. However, Appellees argue, even if each were so detained, his detention was part of the "supervision of parole" under which he continued to be subject. As section 5121 automatically excludes supervision of parole from the definition of detention, Appellees claim neither may be charged with escape.

▇▇▇ ¶ 6 Because neither the scope of "supervision of parole" nor the interplay of the phrase with the remainder of the statute has ever been specified, this statutory phrase is ambiguous under the present facts such that statutory interpretation is warranted. *Commonwealth v. Bavusa,* 574 Pa. 620, 832 A.2d 1042, 1044 n. 2 (Pa.2003) (citation omitted). Pursuant to the Statutory Construction Act, "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Id.* at 1049 (citing 1 Pa.C.S. § 1921(a)). "When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute."

*Id.* at 1049–50 (citing 1 Pa.C.S. § 1921(c)).

¶ 7 Applying the enumerated considerations yields the legislative intent behind Section 5121 to punish all those who remove themselves from official detention without permission. When read in this context, it is apparent the exclusions for supervision of probation or parole are not meant to apply to parolees who have been arrested for parole violations, placed in a detention facility, and have acknowledged they are now deemed "prerelease" detainees, as was the case with each Appellee. To read section 5121 otherwise is incongruent with the definitions within subsection (e) and the overarching purpose of subsection (a) and cannot therefore stand scrutiny.

¶ 8 Once a parolee is arrested and detained for failing to report, and acknowledges he is essentially in "prerelease" status, he is in "official detention" for purposes of Section 5121 just as any other person placed in custody is. As such, he can hold no reasonable expectation that he retains the liberties and freedoms customary to a person operating under "supervision of parole."

¶ 9 This holding is consistent with that reached in *Commonwealth v. Davis,* 852 A.2d 392 (Pa.Super.2004), where we affirmed judgment of sentence under section 5121 for an inmate who had been removed from prison and housed at Penn Capp in "prerelease" status at the time he left the facility without permission. In rejecting the defendant's claim that once out of prison he was on parole and thus eligible for the "supervision of parole" exclusion, this Court reasoned that "prerelease" translates to " 'prior to release' and begs the question, [']prior to release on what?['] " *Id.* at 396. As parole could not have yet commenced as long as the defendant was

in "prerelease" status, we held, it must be that the defendant was not under "supervision of parole."

¶ 10 While the facts show each Appellee had already been placed on parole prior to the events in question, the logic and public policy considerations announced in *Davis* with respect to the distinctions between "supervision of parole" and prerelease status nevertheless apply. Critically, each Appellee had been removed from the normal course of supervision of parole and recommitted to a detention facility pending a hearing to determine whether sufficient evidence of parole violation supported his detainment. This commitment was therefore not a term or condition of his release under supervision of parole; it was a suspension of such release, and a recommitment to official detention pending the outcome of his hearing. Breaking free from such detention is certainly among the mischief intended to be remedied by section 5121.

¶ 11 Moreover, while neither Appellee's parole status could be officially revoked— and his status officially reclassified to "prerelease"—prior to the hearing, each understood that the nature of his placement had materially changed, as evidenced by his written acknowledgment that he was to be considered on "prerelease" status upon his commitment. Neither Appellee, therefore, can be heard to complain that a charge under section 5121 for releasing himself after agreeing he was in a prerelease state worked an unfair surprise or other due process violation. To the contrary, the consequences of interpreting section 5121 to apply are appropriate and just, under the facts of each case.

¶ 12 Finally, we note such an interpretation is necessary lest an absurdity having no basis in reason, law, or public policy arise. To give recommitted parole violators incentive to attempt a "no-risk" es-cape from detention centers such as Penn CAPP, centers from which they are told they are not free to leave, needlessly taxes our enforcement resources and places the public at large in danger. We find this potentiality was not what the General Assembly intended when it crafted and enacted the "supervision of probation or parole" exclusion for persons released on parole.

¶ 13 For the foregoing reasons, we conclude Section 5121(a) may apply to a parolee once he is detained as were Appellees here. Accordingly, we vacate the orders of the trial court below and remand for proceedings consistent with this decision.

¶ 14 Order vacated. Case remanded. Jurisdiction relinquished.