J-S82011-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TERRELL TREVOR PERRY, | |
| Appellant | No. 21 WDA 2017 |

Appeal from the Judgment of Sentence Entered November 30, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003772-2016

BEFORE:  BENDER, P.J.E., STEVENS, P.J.E.[*], and STRASSBURGER, J.[**]

MEMORANDUM BY BENDER, P.J.E.:                 FILED MARCH 05, 2018

Appellant, Terrell Trevor Perry, appeals from the judgment of sentence of an aggregate term of 1-2 years' incarceration, imposed following his conviction for escape and criminal mischief.  Herein, Appellant challenges the sufficiency of the evidence supporting his escape conviction; in particular, Appellant contends that he was not in "official detention" within the meaning of the escape statute when he absconded from supervision.  See 18 Pa.C.S. § 5121(e).  After careful review, we affirm.

The trial court briefly summarized the facts adduced at trial as follows:

> On or about December 11, 2015, [Appellant] was on state parole due to an unrelated conviction.  He had been residing at Penn Pavilion, a residential alternative housing facility, as a

_____

[*] Former Justice specially assigned to the Superior Court.
[**] Retired Senior Judge assigned to the Superior Court.

condition of his parole. While there, [he] refused to comply with a strip search. His failure to consent to the strip search was deemed a violation of his state parole and a warrant was issued by the State Parole Board committing [Appellant] to the Renewal Center, another residential alternative housing facility. Pursuant to the warrant, [Appellant] was physically transferred to the Renewal Center on December 11, 2015. As a parole violator, [Appellant] was brought to the Renewal Center in handcuffs and shackles. He was not permitted to leave the facility and he was under total lockdown and was not free to leave for a period of 60 to 120 days. He was not permitted to obtain work release. The doors were always locked and could only be opened by a staff member.

On February 6, 2016, [Appellant] threw a piece of exercise equipment through a window of the Renewal Center. He climbed through the broken window and exited the Renewal Center.

Trial Court Opinion (TCO), 6/23/17, at 2.

On May 12, 2016, the Commonwealth charged Appellant with escape, 18 Pa.C.S. § 5121(a); and criminal mischief, 18 Pa.C.S. § 3304(a)(5). The case proceeded to a non-jury trial held on June 10, 2017. At trial, the Commonwealth presented the only witness to testify, Nicole Brannon, the manager of the parole violator unit at the Renewal Center. The parties also agreed to several factual stipulations. That same day, the trial court convicted Appellant of both offenses, and immediately sentenced him to 1-2 years' incarceration for escape, and a concurrent term of 90 days' incarceration for criminal mischief. Appellant field a timely notice of appeal and timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on June 23, 2017. Appellant now presents the following question for our review: "Did the Commonwealth fail to present

sufficient evidence to support [Appellant]'s conviction?" Appellant's Brief at 5.

Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

The escape statute provides, in pertinent part, as follows:

(a) Escape.--A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

...

(e) Definition.--As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S. § 5121 (emphasis added).

Appellant argues that he was not subject to "official detention," as that phrase is defined under Section 5121(e), when he absconded from the

Renewal Center. Essentially, he contends that he was either under parole supervision when he absconded or, alternatively, that his parole status was "so ambiguous and unclear [that] the Commonwealth was unable to prove that [Appellant] was not being supervised pursuant to his parolee status while at [the] Renewal Center." Appellant's Brief at 9. He argues:

> There is no question that [Appellant] was on parole at the time of the alleged incident. Given that his parole status had yet to be revoked, Renewal's staff was simply supervising [him], thereby excluding him from the category of persons under "official detention" as defined in 18 Pa.C.S. § 5121(e). Parole has been defined as a method of rehabilitation that permits offenders to serve a period of their sentences outside of prison walls, subject to the terms and conditions imposed by the Commonwealth. Riverbank v. Pennsylvania Board of Probation and Parole, 514 A.2d 967 (Pa. Cmwlth. 1985). Part of [Appellant]'s rehabilitation consisted of him working with Penn Pavilion, a halfway house and work center located in New Brighton. At Renewal, [Appellant] was being housed on the parole violators' unit for failing to comply with a strip search while at Penn Pavilion. Of note is that he was transferred to Renewal by parole, thereby rendering him supervised. Brannon even conceded during cross-examination that [Appellant] was under parole in the lockdown unit.

Appellant's Brief at 11 (citations to the trial transcript omitted, emphasis in original).

The trial court rejected this argument, reasoning as follows:

> In this case it is clear that [Appellant] was not being housed at the Renewal Center pursuant to his supervision while on parole. He was ordered, by warrant, to be taken into custody and housed at the Renewal Center due to a violation of his parole. While at the Renewal Center, [Appellant] was in custody and he was not free to leave. The instant case is akin to Commonwealth v. Maldonado, 966 A.2d 1144 ... (Pa. Super. 2009), a case in which a defendant fled a[] community

- 4 -

corrections center after violating conditions of parole. In that case, the Superior Court noted that

> [o]nce a parolee is arrested and detained for [violating parole], and acknowledges he is essentially in "prerelease" status, he is in "official detention" for purposes of Section 5121 just as any other person placed in custody is. As such, he can hold no reasonable expectation that he retains the liberties and freedoms customary to a person operating under "supervision of parole."

> Id. [at 1147]. Accordingly, [Appellant] was being detained for law enforcement purposes when he fled the Renewal Center.

TCO at 4.

In Maldonado, the defendants were apprehended by their respective parole officers for technical violations of the terms of their parole. Maldonado, 966 A.2d at 1145. They were placed in a private facility owned by Firetree, Ltd., which administered the Pennsylvania Community Alternative to Prison Program ("Penn CAPP") through a contract with the Commonwealth. Id. A detainer was lodged; however, no adjudication of their parole violations had occurred when they absconded from the facility. Id. Nevertheless, upon their admission to Penn CAPP, each defendant signed a form advising them that they were no longer on parole but, instead, in a pre-release status. Id.

Both individuals were charged with escape, however, the trial court dismissed the charges on the basis that they were parolees within the meaning of the escape statute. Id. at 1146. The issue before this Court in Maldonado was

> whether Section 5121 necessarily excludes all parolees from its ambit, even those who have been arrested for violating terms of

their parole, notified they are considered to be in "prerelease" status, and detained in an official housing facility from which they leave without permission prior to adjudication of their parole violation hearings.

Id.

The Maldonado Court began its analysis by noting that "placement in Penn CAPP, though not a prison, may subject one to official detention as contemplated in the escape statute." Id. The Court then concluded that "detainment in Penn CAPP constrains one's freedom of movement to within the confines of a housing facility such that placement there effects the kind of detention contemplated within the meaning of Section 5121." Id. at 1147.

The Maldonado Court then turned to the defendants' claim that they were under "supervision of parole" when detained, and thus their status as parolees controlled, and precluded any charges under Section 5121. Id. To address this claim, the Court engaged in statutory interpretation of the phrase "supervision of parole," which is not specifically defined in Section 5121, and had not been addressed in previous cases examining the statute. Id. The Court concluded that

> the legislative intent behind Section 5121 to punish all those who remove themselves from official detention without permission. When read in this context, it is apparent the exclusions for supervision of probation or parole are not meant to apply to parolees who have been arrested for parole violations, placed in a detention facility, and have acknowledged they are now deemed "prerelease" detainees, as was the case with each Appellee. To read section 5121 otherwise is incongruent with the definitions within subsection (e) and the overarching purpose of subsection (a) and cannot therefore stand scrutiny.

Once a parolee is arrested and detained for failing to report, and acknowledges he is essentially in "prerelease" status, he is in "official detention" for purposes of Section 5121 just as any other person placed in custody is. As such, he can hold no reasonable expectation that he retains the liberties and freedoms customary to a person operating under "supervision of parole."

This holding is consistent with that reached in Commonwealth v. Davis, 852 A.2d 392 (Pa. Super. 2004), where we affirmed judgment of sentence under section 5121 for an inmate who had been removed from prison and housed at Penn Capp in "prerelease" status at the time he left the facility without permission. In rejecting the defendant's claim that once out of prison he was on parole and thus eligible for the "supervision of parole" exclusion, this Court reasoned that "prerelease" translates to "'prior to release' and begs the question, [']prior to release on what?[']" Id. at 396. As parole could not have yet commenced as long as the defendant was in "prerelease" status, we held, it must be that the defendant was not under "supervision of parole."

While the facts show each Appellee had already been placed on parole prior to the events in question, the logic and public policy considerations announced in Davis with respect to the distinctions between "supervision of parole" and prerelease status nevertheless apply. Critically, each Appellee had been removed from the normal course of supervision of parole and recommitted to a detention facility pending a hearing to determine whether sufficient evidence of parole violation supported his detainment. This commitment was therefore not a term or condition of his release under supervision of parole; it was a suspension of such release, and a recommitment to official detention pending the outcome of his hearing. Breaking free from such detention is certainly among the mischief intended to be remedied by [S]ection 5121.

Moreover, while neither Appellee's parole status could be officially revoked—and his status officially reclassified to "prerelease"—prior to the hearing, each understood that the nature of his placement had materially changed, as evidenced by his written acknowledgment that he was to be considered on "prerelease" status upon his commitment. Neither Appellee, therefore, can be heard to complain that a charge under section 5121 for releasing himself after agreeing he was in a prerelease state worked an unfair surprise or other due process violation.

> To the contrary, the consequences of interpreting [S]ection 5121 to apply are appropriate and just, under the facts of each case.
>
> Finally, we note such an interpretation is necessary lest an absurdity having no basis in reason, law, or public policy arise. To give recommitted parole violators incentive to attempt a "no-risk" escape from detention centers such as Penn CAPP, centers from which they are told they are not free to leave, needlessly taxes our enforcement resources and places the public at large in danger. We find this potentiality was not what the General Assembly intended when it crafted and enacted the "supervision of probation or parole" exclusion for persons released on parole.

Id. at 1147–48.

Instantly, the State Parole Board issued a warrant to commit Appellant to the Renewal Center for alleged violations of his parole committed when he was housed at Penn Pavilion. N.T., 11/30/16, at 8, 13, 21-22. Appellant was then detained in the parole violator's unit, which "is a complete lockdown unit...." Id. at 11. Appellant signed an intake form upon his arrival, which notified him that he would be charged with escape if he left. Id. at 14.

We agree with the trial court that these facts are sufficiently analogous to those of Maldonado to conclude that Appellant was in "official detention" within the meaning of Section 5121. Appellant's status as a mere parolee serving the term of his parole, as contemplated under Section 5121(e), changed when he was detained in anticipation of a parole violation hearing. To permit any other interpretation is, as the Maldonado Court warned, contrary to "reason, law, [and] public policy...." Maldonado, 966 A.2d at 1148. Most importantly, Appellant was subject to a warrant to detain him. As such, Appellant did not merely violate the terms of his parole when he

fled the Renewal Center; instead, he fled following the functional equivalent of his arrest, a restraint on his liberty that went far beyond the terms of his parole. Moreover, under the specific facts of this case, Appellant cannot credibly claim that he lacked notice that he could be subject to an escape charge if he absconded from the Renewal Center. To the contrary, he was specifically informed of and acknowledged his criminal liability for escape when he arrived.

Additionally, we note that Section 5121(e) does not expressly exclude probationers or parolees, as a class, from the escape statute. Surely, the legislature was capable of excluding such a class from the terms of the statute, but chose not to do so. Rather, Section 5121(e) dictates that the phrase "'official detention' … does not include supervision of probation or parole[.]" 18 Pa.C.S. § 5121(e). A rational interpretation of this statutory language indicates that conditions of probation and parole cannot alone constitute an official detention, not that probationers and parolees are excluded classes from the scope of the escape statute, although it may often be convenient shorthand to conflate the two concepts.

Once a probationer or parolee is detained in anticipation of a violation hearing, they cease being subject to the normal course of supervisory conditions which were exempted from the definition of "official detention." Their "status" is somewhat irrelevant in this regard, as the dispositive factor as to what constitutes an "official detention" concerns the nature of the restrictions on liberty imposed on the person, regardless of their status. If

such restrictions are merely imposed as conditions of probation or parole, then the breach of those conditions cannot constitute an escape. If, however, a probationer or parolee is detained for violations of probation or parole, that detention is not itself a condition of probation or parole and, therefore, a breach thereof can serve as the basis for an escape charge and conviction.

Appellant argues, in the alternative, that this Court should reconsider our decision in Maldonado. Even if we were inclined to do so,[1] "[t]his panel is not empowered to overrule another panel of the Superior Court." Commonwealth v. Beck, 78 A.3d 656, 659 (Pa. Super. 2013). Accordingly, we decline to address Appellant's alternative argument.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/2018

_____

[1] We are not so inclined. We agree with the Maldonado Court's well-reasoned and practical interpretation of the interplay between Sections 5121(a) and (e). We do not believe the legislature intended to create a loophole in the escape statute for parolees detained in anticipation of the adjudication of alleged parole violations.