J-S18003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HERIBERTO EDDIE DIAZ | : | No. 688 MDA 2019 |

Appeal from the Order Entered March 25, 2019,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s):  CP-22-CR-0001830-2018.

BEFORE:   KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED SEPTEMBER 09, 2020**

The Commonwealth appeals from the order granting the petition for writ of *habeas corpus* filed by Heriberto Eddie Diaz.  We affirm.

On January 23, 2018, employees of Keystone Correctional Services ("Keystone") reported a drug overdose event to 911, seeking medical attention for Diaz, a resident of the facility, who seemed disoriented and had fallen to the floor complaining of tightness in his chest.  A Keystone employee searched Diaz and found two bags containing heroin on his person.

The trial court summarized the relevant factual and procedural history that followed:

> [Diaz] was charged with contraband, possession of a
> controlled substance, and drug paraphernalia, as he was allegedly

_____

[*] Former Justice specially assigned to the Superior Court.

in possession of a controlled substance while residing at Keystone . . . . On April 5, 2018, following a preliminary hearing before [a] district magistrate . . ., it was determined that a *prima facie* case was established and the charges were forwarded to this court for disposition.  [Diaz filed a] petition for *habeas corpus*, [wherein he] asserted that a *prima facie* case with regard to the charges of contraband were not established.  Specifically, it was averred that Keystone . . . is not a penal or correctional institution under the pertinent statue and, therefore, the charges warranted dismissal. . . .

At [a] March 25, 2019 *habeas corpus* hearing, there was a stipulation to adopt the transcript from a prior proceeding, specifically, the *habeas corpus* hearing in *Commonwealth* v. *William Quarles* (4235-CR-2018 ).  Daniel McIntyre, the Director of Community Corrections for the Department of Corrections [("DOC")], testified at the *Quarles* hearing.  Mr. McIntyre testified that Keystone . . . is a 150-male group home facility housing those who are just coming out of a state correctional facility until they are able to get into a home plan.  A referral unit, which is underneath the Department of Community Corrections Bureau [("DOCC")], gets referrals from state correctional institutions to find a home plan suitable for re-entry.  It also houses the "halfway back" population, which are those who are in violation of certain conditions and are placed there pending an adjustment or re-entry into the community.  Keystone is a secure facility, as it is equipped with metal detectors and wands, and searches are conducted; residents must be searched upon entry.  There is a schedule in place for the residents to come and go for work, leisure activities, and appointments.  Aside from those residents who are serving a state intermediate (SI) sentence, the residents at Keystone have been paroled and Keystone serves as their parole address.  If one of those residents were to walk out of Keystone, or not return from work or a home pass, they would not be charged with escape under the criminal code; rather, it would be considered a parole violation.  The [DOCC] does not give time credit towards the jail portion of a sentence for time spent at Keystone.  For the time that the residents are there, they are not considered to be in jail; they are not serving a jail sentence.  Rather it is a temporary residence for parolees until they obtain a home plan.  When residents leave Keystone, they are not escorted, nor are they guarded or under armed transport to their appointments/employment.

Terry Davis, the owner and president of Keystone, also testified at the *Quarles* hearing. He described Keystone as a very secure facility, with twelve to fifteen foot fencing with razor wire on top. The [DOCC] decides who is assigned to Keystone, and re-entrants must abide by a set of standard rules. Such rules, as set forth by the [DOCC], include not bringing drugs or contraband into the program, no assaultive behavior, and no leaving without permission. Mr. Davis further testified that Keystone is a community corrections facility, not a prison. The land that the building is built upon is owned by Mr. Davis, not by Dauphin County or the Commonwealth; Mr. Davis pays the mortgage. There is no evidence that the state leases any portion of the situate land.

In addition to the foregoing testimony being made part of the record in the *habeas corpus* hearing in this case, there was also testimony offered by Howard Potts, a supervisor at Keystone. When asked about the types of residents at Keystone, Mr. Potts testified that they included state IP cases, half-way backs, parolees, and sex offenders. He described half-way backs as those that had basically been living on the street on an approved home plan and had violated parole, so they are mandated by the [DOCC] to live at Keystone. He also iterated that Keystone is a secure facility with rules established by the [DOCC].

Mr. Potts testified that . . . Diaz was a half-way back, so he was mandated by the [DOCC] to stay at Keystone. When asked to explain the difference between a halfway-back and those on parole, Mr. Potts repeated that while parolees are coming straight out of incarceration, a halfway-back has already been incarcerated then moved to an approved home plan before coming to Keystone. Also, regarding the half-way back population, those individuals are still under supervision and Keystone is their approved parole residence; the rules for half-back residents and parole residents are the same. The half-back population can go to work on their own, have leisure time on their own, and are not required to be escorted by a staff person for any of these outside activities. Mr. Potts stated that individuals are permitted to leave the premises for work, for job searches, and for four to six hour leisure passes. Finally, in response to questions from this court, Mr. Potts testified that Keystone is a privately owned company, he does not receive a paycheck from the Commonwealth of Pennsylvania, and he was hired by Terry Davis. Mr. Potts stated that Mr. McIntyre, as director of community corrections for the [DOCC], would not be

able to fire Mr. Potts. On the other hand, Mr. Davis, as president of Keystone, would be authorized to fire him. It is important to note that Mr. Potts conceded that in any instance where his testimony is inconsistent with the testimony of Mr. McIntyre or Mr. Davis, the testimony of Mr. McIntyre and Mr. Davis would be superior to his own.

Trial Court Opinion, 8/14/19, at 1-5 (footnotes, citations to the record, and unnecessary capitalization omitted).

At the conclusion of the March 25, 2019, hearing, the trial court verbally granted Diaz's *habeas corpus* petition, and an order dismissing the charges against Diaz was entered on the docket on the same date. On April 26, 2019, 32 days later, the Commonwealth filed its notice of appeal.[1] Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issues for our review:

A. Whether [the Commonwealth's] instant appeal is timely where the lower court did not enter an order on the docket granting [Diaz's] *habeas corpus* petition until the last day of the thirty day notice of appeal deadline from the verbal order?

B. Whether the lower court erred in granting [Diaz'] *habeas corpus* petition where [Diaz] brought heroin into Keystone . . . which constitutes a prison as [Diaz] was remitted to official detention therein by the Pennsylvania Department of Corrections and Pennsylvania Board of Probation and Parole to serve at least a portion of his state sentence?

---

[1] The Commonwealth included in its notice of appeal its good-faith certification that the trial court's order would terminate or substantially handicap its prosecution of Diaz. **See generally**, **Commonwealth v. Dugger**, 486 A.2d 382 (Pa 1988).

Commonwealth Brief at 4 (unnecessary capitalization omitted).

In its first issue, the Commonwealth contends that its appeal was timely-filed.[2] Pursuant to our appellate rules, a notice of appeal must be filed within thirty days after the entry of the order from which the appeal is taken. **See** Pa.R.A.P. 903. The date of entry of an order (and the date the appeal period begins to run) is the date the clerk of courts mails or delivers copies of the order to the parties. **See Commonwealth v. Carter**, 122 A.3d 388, 391 (Pa. Super. 2015); **see also** Pa.R.A.P. 108(a)(1), (d)(1); Pa.R.Crim.P. 114(c)(2)(c) (providing that docket entries "shall contain" the "date of service of the order"). The clerk may send an electronic copy of the order to an attorney (or a party, if unrepresented) if the attorney has requested to receive electronic service. **See** Pa.R.Crim.P. 114(B)(3)(c). When there is a docketing failure or lack of notice, this Court will excuse an untimely appeal. **See e.g**., **Commonwealth v. Jerman**, 762 A.2d 366, 368 (Pa. Super. 2000).

The Commonwealth maintains that, although Diaz's *habeas corpus* petition was verbally granted on March 25, 2019, the order was neither entered on the docket nor served on Diaz or the Commonwealth until April 24,

---

[2] Neither the trial court nor Diaz addressed this issue. Nevertheless, this Court issued a rule to show cause why the appeal should not be quashed as untimely. The Commonwealth responded to the rule. Thereafter, the rule was discharged, and the matter was referred to this panel for determination as to whether the appeal should be quashed as untimely-filed.

2019. The Commonwealth claims that it then timely filed its notice of appeal two days later, on April 26, 2019.

Based on our review, the record contains a written order entered on March 25, 2019, dismissing all charges against Diaz.[3] Additionally, the docket reflects an entry on March 25, 2019, indicating that a hearing was conducted, and that the charges filed against Diaz were dismissed. **See** Trial Court Docket, CP-22-CR-0001830-2018, at 8. The March 25, 2019 docket entry further indicates that the ***public defender*** was served with the dismissal order via eservice on that same date.[4] ***Id***. However, there is no entry on the docket reflecting that any type of service of the dismissal order was ever made on the ***district attorney***.[5]

Given this failure to comply with the mandatory procedures under Pa.R.CrimP. 114 and Pa.R.A.P. 108, we are unable to ascertain the date upon which the Commonwealth was served with the trial court's dismissal order and, therefore, simply cannot conclude when, if ever, the thirty-day appeal

---

[3] The Commonwealth, as the appellant, did not attach a copy of the written order granting Diaz's petition to its notice of appeal. However, upon review of the record, we located the dismissal order entered on March 25, 2019, granting Diaz's petition and dismissing all charges against him.

[4] The docket suggests that both the public defender and the district attorney requested to receive electronic service from the clerk of courts, as all service to these parties was made electronically via eservice. **See** Trial Court Docket, CP-22-CR-0001830-2018, at 5-9.

[5] Although the Commonwealth claims that a formal order granting the petition was entered on April 24, 2019, we find no entry whatsoever on that date.

period began to run. As a result, there is no basis for us to conclude that the Commonwealth's notice of appeal was not timely filed. We therefore decline to quash the appeal as untimely.

In its second issue, the Commonwealth contends that the trial court erred in granting Diaz's *habeas corpus* petition. Our scope and standard of review regarding a *habeas corpus* petition is as follows: "We review a trial court's grant [or denial] of a pre-trial *habeas corpus* motion *de novo* and our scope of review is plenary." *See Commonwealth v. Dantzler*, 135 A.3d 1109, 1112 (Pa. Super. 2016) (*en banc*).

As this Court explained in *Dantzler*:

> A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

*Id*. (internal quotation marks and citations omitted).

> In reviewing a trial court's order granting [or denying] a defendant's petition for writ of *habeas corpus*, we "must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." . . . Notably, the Commonwealth does not have to prove the defendant's guilt beyond a reasonable doubt. Further, the evidence must be considered in the light most favorable to the Commonwealth so that inferences that would support a guilty verdict are given effect.

*Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005) (citations omitted).

Under the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S.A. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. *See* 1 Pa.C.S.A. § 1921(b). Words and phrases are to be construed according to the rules of grammar and according to their common and approved usage, unless they are technical words and phrases that have acquired a peculiar meaning or definition. *Id*. § 1903(a). Further, penal statutes are to be strictly construed. *Id*. § 1928(b)(1).

In the court below, the Commonwealth sought to convict Diaz of the crime of contraband, which is defined by the crimes code as follows:

> ***Controlled substance contraband to confined persons prohibited***. — A person commits a felony of the second degree if he sells, gives, transmits or furnishes to any convict in a prison, or inmate in a mental hospital, or gives away in or brings into any prison, mental hospital, or any building appurtenant thereto, or on the land granted to or owned or leased by the Commonwealth or county for the use and benefit of the prisoners or inmates, or puts in any place where it may be secured by a convict of a prison, inmate of a mental hospital, or employee thereof, any controlled substance included in Schedules I through V of the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act, (except the ordinary hospital supply of the prison or mental hospital) without a written permit signed by the physician of such institution, specifying the quantity and quality of the substance which may be furnished to any convict, inmate, or employee in the prison or mental hospital, the name of the prisoner, inmate, or employee for whom, and the time when the same may be furnished, which permit shall be delivered to and kept by the warden or superintendent of the prison or mental hospital.

18 Pa.C.S.A. § 5123(a).

- 8 -

The statute further provides that "[a] prisoner or inmate commits a felony of the second degree if he unlawfully has in his possession or under his control any controlled substance in violation of section 13(a)(16) of the Controlled Substance, Drug, Device, and Cosmetic Act[.]"  18 Pa.C.S.A. § 5123(a.2).  Additionally, an "inmate" is defined by the statute as "[a] male or female offender who is committed to, under sentence to or confined in a penal or correctional institution."  18 Pa.C.S.A. § 5123(e).[6]

The Commonwealth contends that, by bringing heroin into Keystone, Diaz committed a second-degree felony because Keystone constitutes a "prison" within the meaning of section 5123(a).  Commonwealth Brief at 14.  In support of its position, the Commonwealth points to the Prisoner Litigation Act, 42 Pa.C.S.A. § 6601-6608, which defines a "prison" as "a State, county, or other facility which incarcerates or officially detains persons accused of, convicted of, or sentenced for violations of criminal law or the terms or conditions of parole, probation, pretrial release, or a diversionary program." 42 Pa.C.S.A. § 6601.

The Commonwealth argues that the restrictive nature of Keystone supports the conclusion that it constitutes a prison for purposes of the contraband statute.  It points out that Keystone is a secure facility, inmates must be searched upon entry, staff conducts pat downs and strip searches of

---

[6] The statute does not define "prisoner."

the inmates, inmates cannot come and go as they please; rather, the departure must be scheduled in advance and approved. The Commonwealth additionally points out that inmates are able to serve portions of their state sentences at Keystone, and they will be charged with escape if they do not return to Keystone.

The Commonwealth asserts that the trial court erred by finding that "[n]o evidence was adduced [at the *habeas* hearing] that would indicate any time [Diaz] spent in this parole facility would count or be credited towards time incarcerated." Commonwealth's Brief at 20 (citing Trial Court Opinion, 8/14/19, at 2, n.4). According to the Commonwealth, "[w]hether the inmates would be entitled to time credit for their time spent in Keystone in the event of a subsequent parole violation and revocation is not at issue." ***Id***. The Commonwealth argues that it presented testimony at the hearing that inmates are able to serve portions of their state sentences in Keystone, and that the time spent in Keystone is being credited towards inmates' maximum sentences. ***Id***. (citing N.T., 10/8/18, at 10). The Commonwealth also argues that it presented testimony at the *habeas* hearing that halfway back offenders, such as Diaz, must remain at Keystone until they find a suitable home plan or serve their maximum state sentence. ***Id***. (citing N.T., 10/8/18, at 6).

Finally, the Commonwealth argues that, because the question of whether a community corrections facility such as Keystone constitutes a "prison" for purposes of the contraband statute is not specified, this statutory

phrase is ambiguous under the present facts such that statutory interpretation is warranted. In this regard, the Commonwealth contends that the object of the contraband statute is to protect inmates and prison staff from coming into contact with dangerous drugs at the hands of a reckless offender, such as Diaz. Specifically, it asserts that the intent of the legislature in part a.2 of Section 5123 "is the prevention of inmates obtaining any controlled substance in any amount whatsoever; in other words the contraband statute seeks absolute abstinence by inmates." *Id*. at 22 (citing ***Commonwealth v. Gerald***, 47 A.3d 858, 826 (Pa. Super. 2012)).

The Commonwealth argues that the Pennsylvania Supreme Court has held that Section 5123 should be interpreted broadly in order to keep illicit drugs out of a prison setting. *Id*. at 22-23 (citing ***Commonwealth v. Williams***, 579 A.2d 869, 871 (Pa. 1990)). The Commonwealth claims that, given the custodial and restrictive nature of Keystone, inmates and staff are not able to remove themselves a sufficient distance from the zone of danger created by inmates smuggling in and exposing others to dangerous drugs. *Id*. at 23.

The Commonwealth further contends that, pursuant to the Pennsylvania Supreme Court's mandate in ***Commonwealth v. Wegley***, 829 A.2d 1148 (Pa. 2003), courts are to look past the lack of a traditional institutional setting and instead focus on the actual effects of the confinement—a restraint of the person's liberty to come and go as he pleases and engage in outside

activities—which effects constitute "detention." Commonwealth Brief at 19 (citing *Commonwealth v. Maldonado*, 966 A.2d 1144, 1146 (Pa. Super. 2009)).[7]

The trial court considered the Commonwealth's second issue and determined that Diaz was not an "inmate" in a "penal or correctional institution" under section 5123 at the time of his alleged offense. The court reasoned:

> [Diaz's] status as a "half-way back" resident is indistinguishable from a parole resident, as the rules for both are the same at Keystone. These residents go to work on their own, can search for employment on their own, and have lengthy leisure time on their own. The same "rules" are often applied to someone living on their own at home while on parole. The fact that [Diaz] may have been "mandated" to stay at Keystone is the same as an "approved" residence of a parolee; Keystone serves as his parole address. As testified to by both Mr. Davis and Mr. McIntyre, a resident at Keystone is not considered to be in jail; rather, it is a temporary residence for parolee until they obtain a home plan. The fact that the DOC decides who is assigned to Keystone and issues a standard set of rules, does not elevate Keystone to the status of a "penal or correctional institution." Keystone is a community corrections facility, not a prison, and is privately owned. As a supervisor at Keystone, Mr. Potts was hired by Mr. Davis, president and owner of Keystone

---

[7] The Commonwealth argues that *Maldonado* is analogous to this case. We disagree. *Maldonado* involved the trial court's grant of a *habeas corpus* petition filed by a parolee based on the Commonwealth's failure to establish a *prima facie* case of escape from a detainment facility under 18 Pa.C.S.A. § 5121. This court vacated and remanded on the basis that the detention facility, though not a prison, may subject one to official detention *as contemplated in the escape statute*. The statute at issue herein, 18 Pa.C.S.A. § 5123, was not addressed or interpreted in *Maldonado*. Thus, we find that case inapposite.

[T]he charge of contraband clearly requires the facility in question to be one of the following: A. A prison[;] B. A mental hospital[;] C. Any building appurtenant thereto[; or] D. Land granted to or owned or leased by the Commonwealth or county for the use and benefit of the prisoners and inmates.

In reverse consideration, we find there to be no state or county interest in the realty of Keystone. No property interest exists and therefore the fourth type of facility does not apply. Next, Keystone is located in West Hanover Township, Dauphin County and, as such, is located miles from any prison or mental hospital. Therefore, it cannot be said to be a building appurtenant thereto. Accordingly, the third type of facility does not apply. Without question, Keystone is not a mental hospital. This being the case, the second type of facility does not apply. Left remaining is the question of whether the privately-owned and run residential, community facility serving as either a re-entry residence from incarceration (or an altered, albeit more restrictive, residential housing within the community) is equivalent to a prison. As the evidence has borne out this very description, and noting that no incarcerated time credit is given to a defendant's stay within such facility, Keystone is not equivalent to a prison.

In light of the description and intended purpose of privately-owned Keystone, and given the fact that the residents there do not fall within the purview of inmates in a penal or correctional institution, we [] do not find that the Commonwealth's cited definition of "prison" applicable. . . . Such definition, taken from the Pennsylvania statute governing prison litigation, is not included in the contraband statute, and clearly speaks to those incarcerated in the traditional sense.

Because we conclude that [Diaz] was not an inmate and did not bring a controlled substance into any of the enumerated locations stated in those required in the crime of contraband under the contraband statute, the charges against him were properly dismissed.

Trial Court Opinion, 8/14/19, at 6-7 (footnotes omitted, formatting altered).

The record supports the trial court's findings, and the inferences and legal conclusions drawn from those findings are free from error. *See Santos*,

- 13 -

*supra*. Although Keystone is a secure facility with numerous restrictions, it simply does not fall within the four categories of institutions enumerated under section 5123. Further, although section 5123 does not include a definition of the terms "prison" or "prisoner," the trial court was presented with ample testimony that Keystone is not a "prison" according to the common and approved usage of that term, particularly as to halfway back residents such as Diaz, who may leave the facility to work, seek employment, or simply to enjoy leisure time. Thus, the trial court properly determined that the Commonwealth did not establish a *prima facie* case of contraband against Diaz. Accordingly, we affirm the trial court's order granting Diaz's *habeas corpus* petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/09/2020

- 14 -